Christopher L. Springer (SBN 291180)
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, California 93101
(805) 456-1496
cspringer@kellerrohrback.com

*Attorney for Plaintiffs and the Putative Class*

Additional Counsel Listed on Signature Block

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| G.G., by and through OMAR GUERRA; I.C., by and through MARIE CORNEJO; L.M., by and through MURISSA MORGAN; and W.E., by and through MARGO ELLERS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ROBLOX CORPORATION, <br><br> Defendant. | No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

## TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   PARTIES ..............................................................................................................4

III.  JURISDICTION AND VENUE............................................................................4

IV.   FACTUAL ALLEGATIONS.................................................................................5

    A.    Roblox Collects and Misuses the Private Information of Children Under Age 13 .5

        1.    Data Collected by Roblox.........................................................................5

        2.    Roblox Fails To Employ Effective Age Gating and Knowingly Collects Private Information From Users Under 13 .................................................9

        3.    Defendant Fails To Require Parental Consent for Users Under 13 ..........11

    B.    Defendant's Conduct Violates COPPA and Its Implementing Regulations. ........11

        1.    The Children's Online Privacy Protection Act of 1998............................11

        2.    Defendant's Conduct Violates COPPA and State Laws ..........................15

        3.    Defendant's Actions Violate Class Members' Reasonable Expectations of Privacy and Are Highly Offensive and Egregious Violations of Social Norms ......................................................................................................18

    C.    Plaintiffs and Class Members Have Suffered Economic Injury, While Defendant Has Been Enriched........................................................................................20

        1.    Private Information Is an Asset That Has Economic Value. ....................20

        2.    Defendant Has Been Enriched by Taking Possession of and Using the Private Information of Plaintiffs and Class Members. ............................24

    D.    Equitable Relief Is Necessary to Protect the Rights of the Class and Prevent Defendant from Profiting from Its Wrongful Conduct. .......................................25

V.    ALLEGATIONS RELATING TO PLAINTIFFS.................................................26

    A.    Plaintiff G.G., a minor, by and through their parent and guardian ad litem, Omar Guerra............................................................................................................26

    B.    Plaintiff I.C., a minor, by and through their parent and guardian ad litem, Marie Cornejo..........................................................................................................27

    C.    Plaintiff L.M., a minor, by and through their parent and guardian ad litem, Murissa Morgan.................................................................................................27

D.    Plaintiff W.E, a minor, by and through their grandparent and guardian ad litem, Margo Ellers. ........................................................................................28

VI.    TOLLING, ESTOPPEL AND RELATION BACK.........................................................29

1.    Discovery Rule Tolling........................................................................29

2.    Tolling of Statute of Limitations.........................................................29

3.    Estoppel ...............................................................................................29

VII.    CLASS ACTION ALLEGATIONS .............................................................................30

A.    State Classes ...................................................................................................30

1.    The Delaware Class .............................................................................30

2.    The Idaho Class....................................................................................30

3.    The New Jersey Class ..........................................................................31

4.    The Washington Class .........................................................................31

VIII.    CLAIMS FOR RELIEF.................................................................................................34

A.    DELAWARE CLAIMS ...................................................................................34

COUNT ONE — DELAWARE NEGLIGENCE...................................................34

COUNT TWO — DELAWARE CONSUMER PROTECTION ACT, 6 Del. Code §§ 2511, *et seq*........................................................................................38

COUNT THREE — DELAWARE Intrusion upon seclusion..............................41

COUNT FOUR — DELAWARE UNJUST ENRICHMENT CLAIM.....................42

B.    IDAHO CLAIMS.............................................................................................44

COUNT FIVE — IDAHO NEGLIGENCE ........................................................44

COUNT SIX — IDAHO CONSUMER PROTECTION ACT, Idaho Code Ann. §§ 48-601, *et seq.* .............................................................................48

COUNT SEVEN — IDAHO INVASION OF PRIVACY ...................................50

COUNT EIGHT — IDAHO UNJUST ENRICHMENT CLAIM.............................51

C.    NEW JERSEY CLAIMS.................................................................................53

COUNT NINE — NEW JERSEY NEGLIGENCE..............................................53

COUNT TEN — NEW JERSEY CONSUMER FRAUD ACT, N.J. Stat. Ann. 56:8–1 *et seq.* ........................................................................57

COUNT ELEVEN — NEW JERSEY INTRUSION UPON SECLUSION.........59

COUNT TWELVE — NEW JERSEY UNJUST ENRICHMENT CLAIM ..............61

D.    WASHINGTON CLAIMS ..................................................................62

COUNT THIRTEEN — WASHINGTON NEGLIGENCE ...............................62

COUNT FOURTEEN — WASHINGTON CONSUMER PROTECTION ACT, Wash. Rev. Code. §§ 19.86.010, *et seq* ..................................................67

COUNT FIFTEEN — WASHINGTON Intrusion upon seclusion .....................69

COUNT SIXTEEN — WASHINGTON UNJUST ENRICHMENT CLAIM............70

IX.    PRAYER FOR RELIEF .......................................................................72

X.    JURY TRIAL DEMAND .......................................................................72

Plaintiffs G.G., a minor, by and through their parent and guardian ad litem Omar Guerra; I.C., a minor, by and through their parent and guardian ad litem Marie Cornejo; L.M., a minor, by and through their parent and guardian ad litem Murissa Morgan; and W.E., a minor, by and through their grandparent and guardian ad litem Margo Ellers, individually, and on behalf of all other similarly situated, hereby file suit against Defendant Roblox Corporation and allege the following based on personal knowledge, information and belief, the investigation of counsel, and public sources.

## I.    INTRODUCTION

1.    This action arises out of Defendant's invasion of privacy and unfair business practices directed toward millions of children in the United States under the age of 13 in violation of the law and societal norms. Specifically, from July 1, 2013 to the present (the "Class Period"), Defendant has knowingly permitted and encouraged children under the age of 13 to create user accounts on the Roblox platform without age-based restrictions ("Full Access Platform"), for the purpose of collecting intimate, deeply intrusive data points about them and their online behavior without notice and parental consent, as defined *infra* at Paragraph 27 ("Private Information"). Defendant uses this unlawfully collected Private Information to increase its profits by providing personally curated content that increases user engagement, to target and serve behavioral advertising, and/or to share users' information with third parties for advertising and other purposes. Defendant engaged in this wrongful behavior for its own profit and in disregard of the privacy and other interests of Plaintiffs and Class Members.

2.    In addition to directing its Full Access Platform to, among others, children under the age of 13, Roblox provides a modified platform for users who self-identify as being under the age of 13. This platform restricts user activity and prevents users from direct messaging other users and accessing some "experiences" without parental consent. But Roblox knows that children under the age of 13 can, and do, routinely gain access to the Full Access Platform by merely indicating they are over the age 13 when they create an account. Roblox could use effective age-gating but fails to do so, because Defendant collects more data and earns more money by knowingly allowing children under the age of 13 on the Full Access Platform.

3.    Defendant Roblox Corporation ("Roblox") markets one of the world's most popular online gaming platforms and has described itself as "the #1 gaming site for kids and teens[.]"[1] The company was founded in 2004 and touts that it is "safe for kids aged 5+."[2] According to Roblox's most recent disclosures, as of the quarter ending September 30, 2025, the site boasts 151.5 million Daily Active Users (DAUs).[3] In 2024, Roblox reported $3.6 billion in revenues and 73.5 billion hours of user engagement on the site.[4]

4.    Roblox is extremely popular with users under the age of 13, by design. As of its most recent annual report, Roblox estimated that 40% of its DAUs were under the age of 13, and 20% were under the age of 9.[5] That amounts to approximately 60.6 million DAUs under age 13 currently on the platform.

5.    To sign up for an account on the Roblox platform, a new user must self-report their age. Users who self-report as being younger than 13 need parental permission to access certain features of the site, including direct messages with other users and access to "experiences" rated as "Moderate."[6]

6.    Because Roblox requires no verification or parental consent to create an account, users under age 13 seeking access to the Full Access Platform can simply select a birthday other than their own when they sign up. On information and belief, Roblox is aware that a substantial number of its users who self-report as being older than 13 are in fact younger than 13.

7.    The Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. §6501 *et seq.*, protects children under 13 years old from having their personal information (as defined in 16 C.F.R. § 312.2 (the "COPPA Rule")) collected by operators of websites or online services directed to children,

---

[1] Roblox, *World's Largest User-Generated Gaming Destination now Available on Xbox* (Jan. 27, 2016), https://ir.roblox.com/news/news-details/2016/Worlds-Largest-User-Generated-Gaming-Destination-now-Available-on-Xbox/default.aspx.
[2] Roblox, *Roblox Company Information*, https://en.help.roblox.com/hc/en-us/articles/203313370-Roblox-Company-Information (last visited Nov. 20, 2025).
[3] Roblox, *Corporate Overview*, https://ir.roblox.com/overview/default.aspx (last visited Nov. 20, 2025).
[4] Roblox Corporation, *Annual Report (Form 10-K)* ("2024 Annual Report") at 9, 77 (Feb. 18, 2025), https://www.sec.gov/ix?doc=/Archives/edgar/data/0001315098/000131509825000033/rblx-20241231.htm
[5] *Id.* at 9.
[6] Roblox, *What happens as I get older on Roblox?* https://en.help.roblox.com/hc/en-us/articles/30428367965460-What-happens-as-I-get-older-on-Roblox (last visited Nov. 20, 2025).

or operators with actual knowledge that they are collecting personal information online from children under 13 years old, unless a parent has first given verifiable consent. Each time Defendant has collected a child's personal information without parental notice or verifiable consent or has failed to delete that information at the request of the child's parents or upon learning it was collected from a child whose parents were not notified or did not provide verifiable consent, Defendant has violated COPPA.

8.      COPPA violations "shall be treated as a violation of a rule defining an unfair . . . act or practice prescribed under section 57a(a)(1)(B) of [the FTC Act]."[7] In other words, a violation of COPPA constitutes an unfair trade practice under Section 5 of the FTC Act. 15 U.S.C. § 45(a).

9.      A majority of states, including but not limited to Delaware, Idaho, New Jersey, and Washington, have enacted laws prohibiting unfair and/or unlawful business practices that are modeled after the FTC Act. These state laws take interpretive guidance from the FTC Act. Defendant, by its unlawful collection and use of the personal information of children under the age of 13 without parental notice or consent, has violated these state laws.

10.      Additionally, the conduct of Roblox constitutes unwarranted invasions of privacy in violation of the substantial protections that numerous states, including but not limited to Delaware, Idaho, New Jersey, and Washington, provide to their citizens. These states recognize the common law right to be free from intrusion upon seclusion, as formulated by § 652B of the Restatement (Second) of Torts, which prohibits intentional intrusion upon the solitude or seclusion of another or his or her private affairs or concerns.

11.      Further, Defendant's conduct has resulted in unjust enrichment under the law of various states, including but not limited to Delaware, Idaho, New Jersey, and Washington.

12.      Moreover, Defendant's conduct constitutes negligence under the common of numerous states, including Delaware, Idaho, New Jersey, and Washington.

13.      Defendant's conduct also violates the Unfair Business Practices Acts of Delaware, Idaho, New Jersey, and Washington.

14.      Accordingly, Plaintiffs, by and through their guardians ad litem, bring this action for the relief asserted herein, on behalf of themselves and the Class of similarly-situated minors whose

---

[7] 15 U.S.C. § 6502(c).

privacy rights have, like Plaintiffs, been violated by Defendant, for damages, restitution, disgorgement, and appropriate injunctive and/or equitable relief to address Defendant's unlawful practices.

## II.   PARTIES

15.   Plaintiff G.G., a minor, by and through their parent and guardian ad litem, Omar Guerra. Plaintiff G.G. and Omar Guerra are residents and citizens of the State of New Jersey and natural persons. During the Class Period, G.G. created and used one or more Roblox accounts (while under the age of 13) and regularly used and engaged with content on the Roblox platform.

16.   Plaintiff I.C., a minor, by and through their parent and guardian ad litem, Marie Cornejo. Plaintiff I.C., and Marie Cornejo are residents and citizens of the State of Washington and natural persons. During the Class Period, I.C. created and used one or more Roblox accounts (while under the age of 13) and regularly used and engaged with content on the Roblox platform.

17.   Plaintiff L.M., a minor, by and through their parent and guardian ad litem, Murissa Morgan. Plaintiff L.M. and Murissa Morgan are residents and citizens of the State of Idaho and natural persons. During the Class Period, L.M. created and used one or more Roblox accounts (while under the age of 13) and regularly used and engaged with content on the Roblox platform.

18.   Plaintiff W.E., a minor, by and through their grandparent and guardian ad litem, Margo Ellers. Plaintiff W.E. and Margo Ellers are residents and citizens of the State of Delaware and natural persons. During the Class Period, W.E. created and used one or more Roblox accounts (while under the age of 13) and regularly used and engaged with content on the Roblox platform.

19.   Defendant Roblox Corporation is a Nevada corporation with its principal place of business at 2850 S Delaware Street, San Mateo, CA, 94403. Roblox transacts business in this District and throughout the United States. Roblox is publicly traded on the New York Stock Exchange (RBLX).

## III.   JURISDICTION AND VENUE

20.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because there are at least one-hundred class members, there is minimal diversity, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

21.   This Court has general personal jurisdiction over Defendant because Defendant's principal place of business is located within this District. *Daimler AG v. Bauman*, 571 U.S. 117, 137

(2014). Additionally, Defendant intentionally avails itself of markets within California through its promotion, distribution, and sale of its products in this State.

22.    Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant resides within this District, and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## IV.    FACTUAL ALLEGATIONS

### A.    Roblox Collects and Misuses the Private Information of Children Under Age 13

#### 1.    Data Collected by Roblox

23.    This case concerns the unlawful collection of personal information from which Roblox is able to personally identify its users. COPPA, as discussed herein, prohibits the collection of this information from children under the age of 13 without appropriate notice and consent of parents.

24.    COPPA generally defines personal information as "individually identifiable information about an individual collected online[.]" 15 U.S.C. § 6501(8). COPPA lists numerous categories of information that it includes in this definition. *Id.* The list is not exclusive. The full list of personal information under COPPA is provided *infra* in Paragraph 60.

25.    Under COPPA, a "persistent identifier" is a piece of information "that can be used to recognize a user over time and across different web sites or online services," such as "a cookie, an Internet Protocol (IP) address, a processor or device serial number, or unique device identifier[.]" 16 C.F.R. § 312.2.

26.    Roblox collects persistent identifiers of its users, including cookies; IP addresses; unique device identifiers, such as processor and/or device serial numbers; and/or UserID.

27.    Roblox's Privacy Policy indicates that for users on the Full Access Platform, Roblox collects the following data, defined herein as "Private Information":[8]

A.    user behavior data, for targeted recommendations and "security and safety purposes";

B.    data on games or "experiences" the user engages with, to recommend content;

---

[8] Roblox, *Roblox Privacy and Cookie Policy* ("Privacy Policy") § 3, https://en.help.roblox.com/hc/en-us/articles/115004630823-Roblox-Privacy-and-Cookie-Policy (last updated Oct. 7, 2025).

C.    location data;

D.    persistent identifiers, such as device information using cookies, including IP address;

E.    transaction information;

F.    advertising-related tracking data;

G.    Email address;

H.    Phone number;

I.    Recorded audio content, for users who elect to use audio features;

J.    Photographs of users, if they use features requiring photo uploads;[9] and

K.    Contact information in the user's address book, if the user opts-in.

28.    For users who self-report as being under 13, Roblox states that it collects the following information, defined herein as "Under 13 Private Information":

A.    Username;

B.    Password;

C.    Date of birth;

D.    Gender (if provided); and

E.    Parent's email address (if provided).[10]

29.    While Roblox states that it does not collect information from users who self-report as being under 13 for targeted advertising, Roblox does employ "contextual advertising" for users under 13, in partnership with third-party advertising companies.[11]

30.    In addition to what Roblox discloses to users about its use of their data, Roblox also instructs enables third-party content creators to collect and use its users' data through its Application

---

[9] Roblox states that it collects video or images of users' faces to animate gestures on users' avatars, and/or for a third-party vendor to verify identification, but claims not to retain this data. *See* Roblox, *Roblox Facial Animation Privacy Notice*, https://en.help.roblox.com/hc/en-us/articles/8064749848980-Roblox-Facial-Animation-Privacy-Notice (last updated July 12, 2023); Roblox, *Roblox Facial Media Capture Privacy Notice* (June 30, 2025), https://en.help.roblox.com/hc/en-us/articles/4412863575316-Roblox-Facial-Media-Capture-Privacy-Notice.
[10] Privacy Policy § 2.
[11] *Id.*

Programing Interface ("API"), which enables the games created by content creators to exchange information with the Roblox platform. Among other information, the API enables creators to obtain each user's UserId, which is a persistent identifier that Roblox uses to identify users (*see* Figures 1 & 2 below).[12]



**Figure 1:** Roblox API Definition of "Player"

31.     The UserId field "contains a read-only integer that **uniquely and consistently** identifies the user's account on Roblox," which "will never change for the same account."[13]



**Figure 2:** Roblox API Definition of "UserId"

32.     Roblox is available to users in a web-browser version and as a mobile app. When a user downloads the mobile app, it includes multiple Software Development Kits ("SDKs"), each of which is a package of software building tools for developers to include third-party functionality. The SDKs for Roblox's app include references to exchanging data with behavioral ad-tracking and performance analysis services including AppsFlyer and Google Firebase, the payment processor Square, and the identity verification service Persona. On information and belief, Roblox uses these SDKs to collect and

---

[12] Roblox, *Player*, Roblox Creator Hub, https://create.roblox.com/docs/en-us/reference/engine/classes/Player#UserId (last visited Nov. 20, 2025).
[13] *Id.*

share Private Information of app users with third parties, including the Private Information of users who are under 13.

33.     In order to download the Roblox app, users grant the app certain permissions. For instance, some permissions are automatically granted when the app is downloaded to an Android device, whereas other permissions require user input.[14] As an example, the Roblox app for Android automatically gains permission to access a user's Advertising ID, which is a unique identifier for targeted advertisements. On Android, the app also requests access to a user's contacts list—potentially giving Roblox a window into a trove of data about a given user as well as the other individuals in that user's contacts list. The Roblox app on Android is further configured to collect and share data with other apps, including the Facebook and Instagram apps, giving Roblox additional access to Private Information of Plaintiffs and Class Members.

34.     Further, Roblox shares the data that it collects. Roblox discloses that it shares Private Information in the following circumstances:[15]

A.     Roblox shares username, email, user ID, and regional location with third-party User Generated Content ("UGC") creators if users interact with their content, as well as transaction information if a user makes a purchase through a UGC application;

B.     Roblox shares IP address, demographic information, and contact and device identifiers with third-party advertisers;

C.     Roblox states in its privacy policy that it may share Private Information with its third-party contractors, including for analytics (Google), moderation, customer support, billing and payment (e.g., PayPal, Amazon, etc.), and hosting services (e.g., Amazon Web Services).

35.     Roblox therefore collects and shares Private Information including persistent identifiers from users who are under age 13.

---

[14] Google, *Permissions on Android*, https://developer.android.com/guide/topics/permissions/overview (last updated Nov. 20, 2025).
[15] Privacy Policy §§ 3-4.

**2.    Roblox Fails To Employ Effective Age Gating and Knowingly Collects Private Information From Users Under 13**

36.     To sign up for a Roblox account, a user must self-report their age. However, there is no verification of this information, so a child may easily report that they are older than age 13 to access the Full Access Platform.[16] As a result, the sign-up process is easy for children to exploit.



**Figure 3:** Roblox sign-up page

37.     Once a user has signed up, they can access "experiences" on the Roblox platform, which are games or interactive spaces designed by users and creators.[17] Roblox estimates that it hosts more than 14 million active "experiences[.]"[18]

38.     Users, including children, can spend money on the platform. "Robux" is the virtual currency of Roblox, which users can purchase using real money, such as by credit card, and spend within the "experiences" or at Roblox's Marketplace.[19] Because Roblox has no effective age gate,

---

[16] *See* Roblox, *Sign up and start having fun!*, https://www.roblox.com (last visited Nov. 20, 2025).
[17] *See* Roblox, *Experiences on Roblox*, https://en.help.roblox.com/hc/en-us/articles/115004734603-Experiences-on-Roblox (last visited Nov. 20, 2025).
[18] 2024 Annual Report at 13.
[19] *See* Roblox, *Ways to Get Robux*, https://en.help.roblox.com/hc/en-us/articles/203313200-Ways-to-Get-Robux (last visited Nov. 20, 2025); Roblox, *Enjoy up to 25% more Robux*, https://www.roblox.com/upgrades/robux (last visited Nov. 20, 2025).

children under 13 overspending on the platform with their parents' credit cards is a common problem, which one study likened to "child gambling."[20]

39.    Roblox recently announced that it is in the process of implementing "age checks" for users who access its on-platform communication features.[21] This will include some combination of ID verification and AI-powered "facial age estimation," through which Roblox will use an image of the child's face to estimate their age. *Id.* However, this feature does not provide a comprehensive age gate but rather purports to restrict users from accessing certain features such as messaging.

40.    To date, Roblox has chosen not to roll out a more effective age gate or to obtain parental consent for all users, because keeping children on the site is essential to Roblox's business model.

41.    Because of its failure to implement an effective age gate, Roblox regularly collects private information subject to COPPA on users under age 13.

42.    Roblox is aware that it may have liability under COPPA, as it admits in its legally required disclosures to investors. In its most recent annual report, Roblox noted rising interest in COPPA enforcement by the FTC and state attorneys general, presenting a litigation risk. It stated: "Although we take reasonable efforts to comply with these laws and regulations, we may in the future face claims under COPPA . . . or other laws or actual or asserted obligations relating to children's privacy."[22]

43.    To reassure those investors, Roblox states that its platform is COPPA compliant for users under age 13 because it has been certified by a program called "kidSAFE," qualifying as an FTC "Safe Harbor."[23] But kidSAFE's certification of Roblox comes with a major caveat: "This certification does not apply to individual games developed and published by third party developers on the ROBLOX

---

[20] *See* Univ. of Sydney, *'Literally just child gambling': study urges swift regulation of Roblox's in-game spending* (Mar. 24, 2025), https://www.sydney.edu.au/news-opinion/news/2025/03/24/literally-just-child-gambling-study-urges-swift-regulation-of-roblox.html.

[21] Matt Kaufman, *Roblox Requires Age Checks for Communication, Ushering in New Safety Standard* (Nov. 18, 2025), https://corp.roblox.com/newsroom/2025/11/roblox-requires-age-checks-limits-minor-and-adult-chat.

[22] 2024 Annual Report at 20.

[23] Roblox Corporation, *2025 Proxy Statement* at 34, 36 (May 29, 2025), https://s27.q4cdn.com/984876518/files/doc_financials/2024/ar/Roblox-2025-Proxy_2024-AR-1-1.pdf.

platform."[24] In other words, there is no attestation that Roblox is COPPA compliant as to the aspect of the product where users primarily spend time: the "experiences."

### 3. Defendant Fails To Require Parental Consent for Users Under 13

44.    As described above, parental consent is not required for a child to create an account on Roblox.

45.    Relatedly, Roblox's Privacy Policy—which children likely are not aware of and do not read—states: "If you're under 13 years old, please get permission from your parent or guardian to use Roblox. You shouldn't use our Services without their go-ahead."[25] Children are "encouraged" under the policy to provide a parent's email address.[26]

46.    Roblox's own employees suggested internally that Roblox should obtain parental approval, but this suggestion was rejected out of hand. According to one report, "employees made a presentation to top management about why parental approval would enhance safety, but 'it didn't even get to the experiment phase and was disapproved'" because it might have reduced traffic on the site.[27]

## B. Defendant's Conduct Violates COPPA and Its Implementing Regulations.

### 1. The Children's Online Privacy Protection Act of 1998.

47.    Congress passed COPPA, codified at 15 U.S.C. § 6501 *et seq.,* in 1998 in response to concerns that children's online activities were being tracked by operators of websites and online services. COPPA is intended to "maintain the security of personally identifiable information of children collected online" and to "protect children's privacy by limiting the collection of personal information from children without parental consent."[28] The standards in COPPA have given rise to, and correlate with, accepted norms throughout society for defining the expectations of privacy for minor children.

48.    COPPA "prohibits unfair . . . acts or practices in connection with the collection, use, and/or disclosure of personal information from and about children on the Internet."[29]

---

[24] Samet Privacy, LLC, *Official Membership Page*, kidSAFE Seal Program, https://www.kidsafeseal.com/certifiedproducts/roblox.html (last visited Nov. 20, 2025).
[25] Privacy Policy at § 2.
[26] *Id.*
[27] Hindenburg Research, *Roblox: Inflated Key Metrics For Wall Street And A Pedophile Hellscape For Kids* (Oct. 8, 2024), https://hindenburgresearch.com/roblox.
[28] 114 Cong. Rec. S125787 (daily ed. Oct. 21, 1998) (statement of Mr. Bryan).
[29] 16 C.F.R. § 312.1.

49.     COPPA applies to any operator of a commercial website or online service directed to children under 13 years of age that collects, uses, and/or discloses personal information from children. Pursuant to COPPA, "Website or online service directed to children means a commercial website or online service, or portion thereof, that is targeted to children." 16 C.F.R. § 312.2.

50.     Operators of websites or online services directed to children that collect personal information from their users must comply with COPPA regardless of whether they have actual knowledge that a particular user is, in fact, a child. *See* 16 C.F.R. § 312.3 ("It shall be unlawful for any operator of a website or online service directed to children, or any operator that has actual knowledge that it is collecting or maintaining personal information from a child, to collect personal information from a child in a manner that violates the regulations prescribed under this part."). Accordingly, as a practical matter, operators of child-directed sites and services must presume that all users are children.[30]

51.     In order to determine whether a website or online service is "directed to children" the FTC will:

> [C]onsider [the website's or online service's] subject matter, visual content, use of animated characters or child-oriented activities and incentives, music or other audio content, age of models, presence of child celebrities or celebrities who appeal to children, language or other characteristics of the web site or online service, as well as whether advertising promoting or appearing on the web site or online service is directed to children.[31]

52.     More specifically, as set forth in 16 C.F.R. § 312.2 (definition of "Web site or online service directed to children," paragraph (1)), factors indicating whether a website or online service is directed to children include:

- the subject matter;

- visual content;

- the use of animated characters or child-oriented activities and incentives;

- music or other audio content;

- age of models;

---

[30] Fed. Trade Comm'n, *Complying with COPPA: Frequently Asked Questions*, https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions (last edited Jan. 2025).
[31] 16 CFR § 312.2.

- presence of child celebrities or celebrities who appeal to children;

- language or other characteristics of the website or online service;

- whether advertising promoting or appearing on the website or online service is directed to children;

- competent and reliable empirical evidence regarding audience composition; and

- evidence regarding the intended audience of the site or service.

53. COPPA also applies to operators of websites or online services that have actual knowledge that they are collecting personal information online from a child under 13 years of age. 15 U.S.C. § 6502(a)(1). Thus, there are two types of websites or online services defined as Operators under COPPA: operators directed at children that collect personal information about their users, and any other operator that has actual knowledge that the personal information they are collecting is from users under the age of 13.

54. COPPA provides, in pertinent part, that:

It is unlawful for an operator of a website or online service directed to children, or any operator that has actual knowledge that it is collecting personal information from a child, to collect personal information from a child in a manner that violates the regulations prescribed [by the FTC].

*Id.*

55. COPPA thus prohibits, *inter alia*, the collection of persistent identifiers for behavioral advertising absent notice and verifiable parental consent. 16 C.F.R. §§ 312.5(c)(7), 312.2.

56. COPPA specifically requires an "operator" covered by COPPA to give notice to parents and obtain their verifiable consent before collecting children's personal information online. 16 C.F.R. §§ 312.4 and 312.5. This includes but is not limited to:

- Posting a privacy policy on its website or online service providing clear, understandable, and complete notice of its information practices, including what information the website operator collects from children online, how it uses such information, its disclosure practices for such information, and other specific disclosures set forth by COPPA, including specific disclosures directly to parents; and

- Obtaining verifiable parental consent prior to collecting, using, and/or disclosing personal information from children.

57. The FTC has interpreted "operators" of websites or online services directed to children and "operators" with actual knowledge that they are collecting personal information online from children under 13 as being "subject to strict liability for COPPA violations."[32]

58. Websites or online services that collect personal information from users of other child-directed websites or online services are deemed as "directed to children" if the website or online service "has actual knowledge that it is collecting personal information directly from users of another website or online service directed to children." 16 C.F.R. § 312.2.

59. COPPA defines personal information "as individually identifiable information about an individual collected online[.]" 15 U.S.C. § 6501(8). As of July 1, 2013, COPPA was enhanced (the "2013 COPPA Enhancement") to provide further protection for children against online tracking and to "giv[e] parents greater control over the online collection of their children's personal information."[33] The 2013 enhancement expanded the definition of children's personal information to include "persistent identifiers" such as cookies that track a child's activity online, geolocation information, photos, videos, and audio recordings.

60. Thus, COPPA defines "personal information" to include:

(1)    A first and last name;

(2)    A home or other physical address including street name and name of a city or town;

(3)    Online contact information;

(4)    A screen or username where it functions in the same manner as online contact information;

(5)    A telephone number;

(6)    A government-issued identifier, such as Social Security, State identification

---

[32] *See* Statement of Joseph J. Simons & Christine S. Wilson, *Regarding FTC and People of the State of New York v. Google LLC and YouTube, LLC*, Fed. Trade Comm'n (Sept. 4, 2019), https://www.ftc.gov/system/files/documents/public_statements/1542922/simons_wilson_google_youtube_statement.pdf.

[33] *Revised Children's Online Privacy Protection Rules Goes Into Effect Today: FTC Continues Safe Harbor Programs, Expands Business and Parental Education Efforts*, Fed. Trade Comm'n, (July 1, 2013), https://www.ftc.gov/news-events/news/press-releases/2013/07/revised-childrens-online-privacy-protection-rule-goes-effect-today.

card, birth certificate, or passport number;

(7)    A persistent identifier that can be used to recognize a user over time and across different web sites or online services, including but not limited to a customer number held in a cookie, an Internet Protocol (IP) address, a processor or device serial number, or unique device identifier;

(8)    A photograph, video, or audio file where such file contains a child's image or voice;

(9)    Geolocation information sufficient to identify street name and name of a city or town;

(10)    A biometric identifier that can be used for the automated or semi-automated recognition of an individual, such as fingerprints; handprints; retina patterns; iris patterns; genetic data, including a DNA sequence; voiceprints; gait patterns; facial templates; or faceprints; or

(11)    Information concerning the child or the parents of that child that the operator collects online from the child and combines with an identifier described in this definition.

16 C.F.R. § 312.2.

61.    The 2013 COPPA Enhancement was the culmination of two years of rulemaking by the FTC that reflected society's growing recognition of the surreptitious surveillance tactics used by advertising companies to track children online and advertise to them while using the internet.

62.    By expressly including persistent identifiers and geolocation data in COPPA's definition of personal information, the FTC intended to deter advertising companies and internet operators such as Roblox from exploiting young children via tracking, profiling, and advertising online.

## 2.    Defendant's Conduct Violates COPPA and State Laws

63.    Roblox, as an operator as defined by COPPA, has violated COPPA by collecting personal information without parental consent from children under the age of 13 on the Full Access Platform whom Roblox knows are under 13. These users include Plaintiffs and the Class they seek to represent.

64.     Roblox is directed to children, as defined by COPPA, and by its own admission, as Roblox holds itself out as "free to play and safe for kids aged 5+" and "the #1 gaming site for kids and teens."[34] As a result, according to its own data, 40% of Roblox DAUs are under age 13.[35] Roblox provides a plethora of child-related content to children on the platform under the age of 13.

65.     Moreover, many of the experiences on Roblox are also directed to children, including but not limited to the My Hello Kitty Cafe, an age 5+ game where users run a Hello Kitty-themed cafe, as well as Adopt Me, an age 5+ game where users adopt pets and roleplay.[36]

66.     Roblox maintains a chart of trending games, which displays icons for games with bright colors, youthful looking characters, and/or other features geared towards children.[37]



**Figure 4:** Roblox Trending Games Chart

67.     Roblox is aware of which of its users are accessing those experiences which are also directed to children, and as such Roblox has actual knowledge that it is collecting personal information directly from users of another online service that is also directed to children.

---

[34] Roblox, *supra* notes 1–2.
[35] 2024 Annual Report at 9.
[36] Roblox, *My Hello Kitty Cafe*, https://www.roblox.com/games/9346039031/Kuromis-Mischief-Mansion-My-Hello-Kitty-Cafe (last visited Nov. 20, 2025); Roblox, *Adopt Me!*, https://www.roblox.com/games/920587237/Adopt-Me (last visited Nov. 20, 2025).
[37] Roblox, *Charts*, https://www.roblox.com/charts?device=computer&country=all (last visited Nov. 20, 2025).

68.     In addition, Roblox has actual knowledge that it is collecting Private Information from users who are under the age of 13. The Private Information collected online by Roblox from these users includes the categories of information listed in COPPA's definition of personal information and categories of Private Information collected online that also are personally identifying.

69.     Roblox collects Private Information on users who are under 13 on the Full Access Platform without obtaining, or even attempting to obtain, prior parental permission. Roblox also collects Private Information of users who self-report as being under 13, including persistent identifiers and/or other data collected by its mobile app.

70.     Some or all of the Private Information Roblox collects on users under 13 is "information concerning [a] child"[38] regulated by the COPPA Rule.

71.     Despite the fact that Roblox is directed to children, and Roblox has actual knowledge that it is collecting Private Information form users under the age of 13, Roblox does not obtain verifiable parental consent before collecting, using, or disclosing the Private Information of its child users, in violation of COPPA.

72.     COPPA and the COPPA Rule enumerate the minimum methods by which Roblox is required to obtain verifiable consent. *See* 15 U.S.C. § 6501(9) and 16 C.F.R. § 312.5(b)(2).

73.     Roblox does not adhere to these rules and requirements with respect to obtaining parental consent.

74.     While COPPA does not itself provide a private right of action for individuals to seek redress for harms arising from COPPA violations, and contains a limited preemption clause barring the imposition of liability by states and local governments "inconsistent" with COPPA (15 U.S.C. § 6502(d)), the United States Court of Appeals for the Ninth Circuit has held that "COPPA's preemption clause does not bar state-law causes of action that are parallel to, or proscribe the same conduct forbidden by, COPPA." *Jones v. Google LLC*, 73 F.4th 636, 644 (9th Cir. 2023).

75.     Therefore, individuals harmed by conduct which violates COPPA such as the conduct described herein may seek redress for harms via state law causes of action.

---

[38]*See* 16 C.F.R. § 312.2.

### 3.   Defendant's Actions Violate Class Members' Reasonable Expectations of Privacy and Are Highly Offensive and Egregious Violations of Social Norms

76.    Roblox's conduct in violating the privacy rights and reasonable expectations of privacy of Plaintiffs and Class Members by implementing a knowingly insufficient age-gating system violates norms and laws designed to protect children—a group that society has long recognized is vulnerable to exploitation and manipulation.

77.    Parents' interest in the care, custody, and control of their children is one of the most fundamental liberty interests recognized by society. It has long been recognized that parents should maintain control over who interacts with their children and how.

78.    Because children are more susceptible to exploitation than adults, society has recognized the importance of providing added legal protections for children, often in the form of parental consent requirements.

79.    COPPA reflects this recognition. As a June 1998 report by the FTC observed, "[t]he immediacy and ease with which personal information can be collected from children online, combined with the limited capacity of children to understand fully the potentially serious safety and privacy implications of providing that information, have created deep concerns about current information practices involving children online."[39]

80.    Similarly, the FTC's enhancements of COPPA in 2013 reflect a specific concern with mobile app tracking and tracking internet users via persistent identifiers, which reflects the seriousness of this issue and the offensiveness with which society regards violations of COPPA's provisions.

81.    Almost every family with a child younger than eight in America has a smartphone and/or tablet in the household.[40] Moreover, most children are given their own devices by the age of

---

[39] Fed. Trade Comm'n, *Privacy Online: A Report to Congress*, at 6 (June 1998), https://www.ftc.gov/sites/default/files/documents/reports/privacy-online-report-congress/priv-23a.pdf.

[40] Victoria Rideout, *The Common Sense Census: Media Use By Kids Age Zero To Eight* at 3, Common Sense Media (2017), https://cdn.cnn.com/cnn/2017/images/11/07/csm_zerotoeight_full.report.final.2017.pdf (last visited Nov. 20, 2025).

four: "75 percent of the children [in a 2015 study] had their own tablet, smartphone, or iPod."[41] And most children under 13 use online apps, including video streaming (64 percent), video gaming (58 percent) and show/movie streaming (58 percent).[42]

82.    Polling also reveals that a majority of parents (80 percent) whose children are under 13 and use online apps say that they worry about their children's privacy when using those apps,[43] with the top concern (69 percent) being data tracking.[44]

83.    Additionally, a survey conducted by the Center for Digital Democracy ("CDD") and Common Sense Media of more than 2,000 adults found overwhelming support for the basic principles of privacy embedded in state and federal law.[45] The parents polled overwhelmingly responded that they disagreed with advertisers collecting and tracking information about children online.

84.    Given the proliferation of internet-connected device usage by children under 13 years of age, coupled with parents' privacy concerns for their children, Defendant's conduct is highly offensive and an egregious breach of social norms.

85.    Defendant's conduct is also egregious in that Roblox knowingly and intentionally instituted an insufficient age-gating system that was designed to be readily bypassed by children under the age of 13, and failed to use readily available tools to monitor the presence of underage users.

86.    By failing to (i) obtain parental consent, (ii) disclose to parents the nature and purpose of their data collection practices (and use of that data), (iii) take other steps to preclude the capture of

---

[41] Alexis C. Madrigal, *Raised By YouTube*, The Atlantic (Nov. 2018), https://www.theatlantic.com/magazine/archive/2018/11/raised-by-youtube/570838 ("[A] team of pediatricians at Einstein Medical Center, in Philadelphia, found that YouTube was popular among device-using children under the age of 2. Oh, and 97 percent of the kids in the study had used a mobile device. By age 4, 75 percent of the children in the study had their own tablet, smartphone, or iPod. And that was in 2015.").

[42] Pixalate, *Pixalate's Harris Poll Survey Recap: Children's Privacy in Mobile Apps* (Mar. 1, 2022, 4:30 PM), https://www.pixalate.com/blog/childrens-online-privacy-harris-poll-recap.

[43] *Id.*

[44] CDP Institute, *Children's Privacy: Data tracking is a big concern for parents - and trust levels in companies are low* (Jan. 24, 2023), https://www.cdpinstitute.org/news/childrens-privacy-data-tracking-is-a-big-concern-for-parents-and-trust-levels-in-companies-are-low/.

[45] Center for Digital Democracy, *Survey on Children and Online Privacy, Summary of Methods and Findings*, https://democraticmedia.org/assets/resources/COPPA-Executive-Summary-and-Findings-1635879421.pdf (last visited Nov. 20, 2025).

children's personal information, and by (iv) manipulating and exploiting the habits of children under 13 for their economic gain, Defendant has breached the privacy rights and reasonable expectations of privacy of Plaintiffs' and the millions of children in the Class who have used Roblox's platform, in contravention of privacy norms that are reflected in consumer surveys, centuries of common law, state and federal statutes, legislative commentaries, industry standards, and guidelines.

**C.    Plaintiffs and Class Members Have Suffered Economic Injury, While Defendant Has Been Enriched.**

87.    Plaintiffs and Class Members have suffered economic injuries which include, but are not limited to, loss of control over their own personal property, which has a market value.

88.    Plaintiffs and Class Members suffered economic injury when Defendant unlawfully took possession of, and was unjustly enriched by commercially exploiting, their Private Information, causing Plaintiffs and Class Members to suffer loss of control over their own information—property which has value to them.

89.    Defendant's unlawful collection and exploitation of the Private Information of Plaintiffs and Class Members have destroyed the private quality of the Private Information and have deprived Plaintiffs and Class Members of the ability to determine whether or not to keep their Private Information private as well as when or if to sell their Private Information—valuable aspects of their rights of ownership that were of paramount importance to Plaintiffs and Class Members—and thus diminished the value of the Private Information.

**1.    Private Information Is an Asset That Has Economic Value.**

90.    The Private Information and Roblox collects and uses had, and continues to have, substantial economic value. This value is well understood in the online technology industry, and personal information is now viewed as a financial asset.

91.    Research on whether there is an established market for personal information dates back well before the Class Period and demonstrates a growing consensus that consumers have economic interests in their valuable sensitive and personal information.

92.    Professor Paul M. Schwartz wrote in the Harvard Law Review:

Personal information is an important currency in the new millennium. The monetary value of personal data is large and still growing, and corporate America is moving

quickly to profit from the trend. Companies view this information as a corporate asset and have invested heavily in software that facilitates the collection of consumer information.[46]

93.     Likewise, in *The Wall Street Journal*, former fellow at the Open Society Institute (and current principal technologist at the ACLU) Christopher Soghoian noted:

> The dirty secret of the Web is that the "free" content and services that consumers enjoy come with a hidden price: their own private data. Many of the major online advertising companies are not interested in the data that we knowingly and willingly share. Instead, these parasitic firms covertly track our web-browsing activities, search behavior and geolocation information. Once collected, this mountain of data is analyzed to build digital dossiers on millions of consumers, in some cases identifying us by name, gender, age as well as the medical conditions and political issues we have researched online.[47]

94.     The cash value of the Personal Information unlawfully collected by Roblox during the Class Period can be quantified. For example, in a study authored by Tim Morey, researchers studied the value that 180 internet users placed on keeping personal data secure. Contact information of the sort that Roblox requires was valued by the study participants at approximately $4.20 per year, and demographic information was valued at approximately $3.00 per year.[48] The chart below summarizes the findings.

---

[46] Paul M. Schwartz, *Property, Privacy and Personal Data*, 117 Harv. L. Rev. 2055, 2056–57 (2004).
[47] Julia Angwin, *How Much Should People Worry About the Loss of Online Privacy?*, Wall St. J. (Nov. 15, 2011),
https://www.wsj.com/articles/SB10001424052970204190704577024262567105738.
[48] Tim Morey, *What's Your Personal Data Worth?*, Design Mind (Jan. 18, 2011),
https://web.archive.org/web/20131206000037/http://designmind.frogdesign.com/blog/what039s-your-personal-data-worth.html (last visited Nov. 20, 2025).

1
2
3
4
5
6
7
8
9
10
11
12
13



**Figure 5:** Revealed Value of Personal Data (Morey 2011)

14
15      95.     Similarly, another study employed a detailed methodology to understand how users

16  value their personal information in exchange for internet-based services.[49] Participants installed a

17  browser plugin that logged their web browsing activities, including the URLs visited and the time of

18  access.[50] The plugin also categorized the websites into eight predefined categories: Email,

19  Entertainment, Finance, News, Search, Shopping, Social, and Health and asked participants questions

20  designed to gather information about their perceptions of privacy, their knowledge of how their

21  personal information might be monetized, and their valuation of specific pieces of Private Information

22  as they visited certain websites.[51] To calculate the value users placed on their personal information, the

23  researchers employed a reverse second-price auction mechanism in which participants bid on the

24
25
26
27  [49] Juan Pablo Carrascal et al., *Your browsing behavior for a Big Mac: Economics of Personal Information Online* (Dec. 28, 2011), https://arxiv.org/pdf/1112.6098.

28  [50] *Id.*
    [51] *Id.*

minimum amount of money they would accept to sell specific pieces of their personal information in exchange for internet-based services they were using.[52]

96.    The results of the study were the following personal information valuations:

- Offline information (age address, economic stats): €25 (~$28.80)

- Browsing History: €7 (~$8.06)

- Interactions on social networks: €12 (~$13.82)

- Search History: €2 (~$2.30)

- Shopping Activity: €5 (~$5.76)

97.    What these studies and others show is that individuals place an economic value on their personal information and are willing to engage in economic transactions in which they grant access to their personal information in exchange for internet-based services.[53] Defendant's unauthorized collection of personal information of Plaintiffs and Class Members deprived them of this opportunity.

98.    Similarly, BIGtoken "is a platform to own and earn from your data. You can use the BIGtoken application to manage your digital data and identity and earn rewards when your data is purchased."[54]

99.    The Nielsen Company, famous for tracking the behavior of television viewers' habits, has extended its reach to computers and mobile devices through the Nielsen Computer and Mobile Panel. By installing the application on a consumer's computer, phone, tablet, e-reader, or other mobile

---

[52] *Id.*

[53] Jacopo Staiano et al., *Money walks: a human-centric study on the economics of personal mobile data*, arXiv preprint, arXiv:1407.0566 (Sept. 13, 2014), https://arxiv.org/abs/1407.0566 (finding that location information is the most valued type of personal data, with a median value of approximately $29, and that participants showed significant sensitivity towards monetizing their personal information collected via mobile phones).

[54] BIGtoken, *What is BIGtoken?*, FAQ, https://web.archive.org/web/20201230225507/https://bigtoken.com/faq (last visited Nov. 20, 2025) ("Third-party applications and sites access BIGtoken to learn more about their consumers and earn revenue from data sales made through their platforms. Our BIG promise: all data acquisition is secure and transparent, with consumers made fully aware of how their data is used and who has access to it.").

device, Nielsen tracks the user's activity, enters that user into sweepstakes with monetary benefits, and allows the user to earn points worth up to $50 per month.[55]

100.    Technology companies recognize the monetary value of users' personal information, insofar as they encourage users to install applications explicitly for the purpose of selling that information to technology companies in exchange for monetary benefits.[56]

### 2.    Defendant Has Been Enriched by Taking Possession of and Using the Private Information of Plaintiffs and Class Members.

101.    Defendant has unlawfully taken possession of and commercially exploited the Private Information of Plaintiffs and Class Members without their permission and without compensating them for the use of their assets.

102.    Defendant's illegal and improper collection, use, and retention of Private Information of children under 13 also has given Roblox a significant economic benefit that cannot be undone.

103.    As alleged above, Plaintiffs' and Class Members' data has massive economic value.

104.    By collecting Plaintiffs' and Class Members' valuable data for free, Defendant has been enriched.

105.    As a result of Roblox's unlawful data collection, Defendant incorporates ill-gotten valuable data from millions of children's accounts. The insights Defendant gleans from users' engagement will enable Roblox to use the Private Information of children under 13 to target them with advertisements and will solidify Roblox's market dominance in providing child-directed content.

106.    Further, Defendant uses and will continue to use their trove of user data, including Plaintiffs' and Class Members' data, to attract third party advertisers. In turn, Defendant will profit

---

[55] Kevin Mercandante, *10 Apps for Selling Your Data for Cash, Best Wallet Hacks* (Nov. 18, 2023), https://wallethacks.com/apps-for-selling-your-data.

[56] Kari Paul, *Google launches app that will pay users for their data*, The Guardian (June 11, 2019), https://www.theguardian.com/technology/2019/jun/11/facebook-userdata-app-privacy-study; Saheli Roy Choudhury & Ryan Browne, *Facebook pays teens to install an app that could collect all kinds of data*, CNBC (Jan. 30, 2019), https://www.cnbc.com/2019/01/29/facebook-paying-users-to-install-app-to-collect-data-techcrunch.html; Jay Peters, *Facebook will now pay you for your voice recordings*, The Verge (Feb. 20, 2020), https://www.theverge.com/2020/2/20/21145584/facebookpay-record-voice-speech-recognition-viewpoints-pronunciations-app.

from Plaintiffs' and Class Members' data by selling advertising space to third parties and leveraging Plaintiffs' and Class Members' data for targeted advertisements.

107.    The economic value of Plaintiffs' and Class Members' Private Information has been undermined by Defendant's collection and use of this data, including sharing that information with third parties.

108.    Defendant's unlawful exploitation of the Private Information of Plaintiffs and Class Members has thus diminished the value of that information, causing Plaintiffs and Class Members to suffer economic loss and injury for which Plaintiffs and Class Members can never be made whole.

**D.    Equitable Relief Is Necessary to Protect the Rights of the Class and Prevent Defendant from Profiting from Its Wrongful Conduct.**

109.    Throughout the Class Period Roblox collected, used, and stored COPPA-protected personal information from Plaintiffs and Class Members without obtaining the verified parental consent required by COPPA for such collection and use.

110.    Roblox continues to profit from its unlawful business practices at the expense of the privacy of children. Roblox has failed to implement effective age gating, failed to identify and remove underage users of Full Access accounts, and failed to delete underage user data.

111.    Because of Roblox's continued unlawful conduct in collecting, using, and storing the personal information of children under the age of 13, Plaintiffs and Class Members are not only vulnerable to Roblox's ongoing violations, but their previously collected data remains vulnerable to misuse by Defendant. These continuing harms have no adequate remedy at law.

112.    Plaintiffs and Class Members are likely to use Roblox in the future and seek protection against Defendant's continued violations of COPPA.

113.    Money damages alone will not protect Plaintiffs and the Class Members from the non-economic harms posed by the misuse of their personal information in violation of COPPA nor from Roblox's impermissible profiting from this misconduct. Thus, Plaintiffs and Class Members have no adequate remedy at law. To the extent that money damages, if available, would constitute an adequate remedy at law barring recovery, Plaintiffs and Class Members assert their claims for the equitable relief

set forth herein as an alternative remedy pending a final determination of the availability of a remedy at law.

114.    For these reasons, Plaintiffs and Class Members seek entry of a permanent injunction (a) requiring Roblox to destroy all personal information of Plaintiffs and Class Members in its possession that was collected in violation of COPPA; (b) requiring Roblox to notify each Plaintiff and Class Member that his or her personal information was collected and has been destroyed; (c) restraining Roblox from directly or indirectly using or benefitting from the personal information of Plaintiffs and Class Members that it wrongly collected, including precluding the use of any Plaintiff's or Class Member's data profile developed, in whole or in part, on such improperly collected information for the purpose of serving targeted or behavioral advertising; and (d) requiring Roblox to relinquish all ill-gotten gains.

## V.    ALLEGATIONS RELATING TO PLAINTIFFS

### A.    Plaintiff G.G., a minor, by and through their parent and guardian ad litem, Omar Guerra.

115.    This action is brought on Plaintiff G.G.'s behalf by Omar Guerra.

116.    During the Class Period, G.G. created and used one or more Roblox accounts (while under the age of 13) and engaged with content on the Roblox platform.

117.    G.G. created a Roblox account when G.G.  was approximately 10 years old.

118.    During the Class Period, Roblox collected G.G.'s Private Information for the purpose of tracking G.G.'s activity, utilizing targeted advertisements, and/or selling goods or services.

119.    During the Class Period, Roblox combined this Private Information with persistent identifiers—including cookies, device information, IP address information, and/or UserID—as part of G.G.'s user profile.

120.    During the Class Period, Roblox shared G.G.'s Private Information with advertisers, third-party content creators, hosting or analytics services, and/or payment processing platforms.

121.    Roblox never obtained consent from nor notified G.G.'s parent and legal guardian, Omar Guerra, at any point prior to or during its collection, use, and sharing of G.G.'s Private Information.

122.    G.G. is likely to use Roblox in the future and seeks protection from Roblox's continuing violations of COPPA protections.

**B.    Plaintiff I.C., a minor, by and through their parent and guardian ad litem, Marie Cornejo.**

123.    This action is brought on Plaintiff I.C.'s behalf by Marie Cornejo.

124.    During the Class Period, I.C. created and used one or more Roblox accounts (while under the age of 13) and engaged with content on the Roblox platform.

125.    I.C. created a Roblox account when I.C. was approximately 9 years old.

126.    During the Class Period, Roblox collected I.C.'s Private Information for the purpose of tracking I.C.'s activity, utilizing targeted advertisements, and/or selling goods or services.

127.    During the Class Period, Roblox combined this Private Information with persistent identifiers—including cookies, device information, IP address information, and/or UserID—as part of I.C.'s user profile.

128.    During the Class Period, Roblox shared I.C.'s Private Information with advertisers, third-party content creators, hosting or analytics services, and/or payment processing platforms.

129.    Roblox never obtained consent from nor notified I.C.'s parent and legal guardian, Marie Cornejo, at any point prior to or during its collection, use, and sharing of I.C.'s Private Information.

130.    I.C. is likely to use Roblox in the future and seeks protection from Roblox's continuing violations of COPPA protections.

**C.    Plaintiff L.M., a minor, by and through their parent and guardian ad litem, Murissa Morgan.**

131.    This action is brought on Plaintiff L.M.'s behalf by Murissa Morgan.

132.    During the Class Period, L.M. created and used one or more Roblox accounts (while under the age of 13) and engaged with content on the Roblox platform.

133.    L.M. created a Roblox account when L.M. was approximately 9 years old.

134.    During the Class Period, Roblox collected L.M.'s Private Information for the purpose of tracking L.M.'s activity, utilizing targeted advertisements, and/or selling goods or services.

135. During the Class Period, Roblox combined this Private Information with persistent identifiers—including cookies, device information, IP address information, and/or UserID—as part of L.M.'s user profile.

136. During the Class Period, Roblox shared L.M.'s Private Information with advertisers, third-party content creators, hosting or analytics services, and/or payment processing platforms.

137. Roblox never obtained consent from nor notified L.M.'s parent and legal guardian, Murissa Morgan, at any point prior to or during its collection, use, and sharing of L.M.'s Private Information.

138. L.M. is likely to use Roblox in the future and seeks protection from Roblox's continuing violations of COPPA protections.

**D.  Plaintiff W.E, a minor, by and through their grandparent and guardian ad litem, Margo Ellers.**

139. This action is brought on Plaintiff W.E.'s behalf by Margo Ellers.

140. During the Class Period, W.E. created and used one or more Roblox accounts (while under the age of 13) and engaged with content on the Roblox platform.

141. W.E. created a Roblox account when W.E. was approximately 9 years old.

142. During the Class Period, Roblox collected W.E.'s Private Information for the purpose of tracking W.E.'s activity, utilizing targeted advertisements, and/or selling goods or services.

143. During the Class Period, Roblox combined this Private Information with persistent identifiers—including cookies, device information, IP address information, and/or UserID—as part of W.E.'s user profile.

144. During the Class Period, Roblox shared W.E.'s Private Information with advertisers, third-party content creators, hosting or analytics services, and/or payment processing platforms.

145. Roblox never obtained consent from nor notified W.E.'s grandparent and legal guardian, Margo Ellers, at any point prior to or during its collection, use, and sharing of W.E.'s Private Information.

146. W.E. is likely to use Roblox in the future and seeks protection from Roblox's continuing violations of COPPA protections.

## VI.    TOLLING, ESTOPPEL AND RELATION BACK

**1.    Discovery Rule Tolling**

147.    Plaintiffs and the Class had no way of knowing about Defendant's conduct with respect to the collection and impermissible and unauthorized use of, and profiting from, the Private Information of Plaintiffs and Class Members.

148.    Neither Plaintiffs nor any other Class Members, through the exercise of reasonable diligence, could have discovered the conduct alleged herein. Further, Plaintiffs and Class Members did not discover and did not know of facts that would have caused a reasonable person to suspect that Defendant was engaged in the conduct alleged herein.

149.    For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims asserted by Plaintiffs and the Class.

**2.    Tolling of Statute of Limitations**

150.    By failing to provide notice of the collection and use of the Private Information and obtain verifiable consent, in violation of COPPA as well as societal norms and conventions, Defendant concealed its conduct and the existence of the claims asserted herein from Plaintiffs and Class Members.

151.    Upon information and belief, Defendant intended by its acts to conceal the facts and claims from Plaintiffs and Class Members. Plaintiffs and Class Members were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendant's conduct. For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiffs or Class Members should be tolled.

**3.    Estoppel**

152.    Despite their duties and obligations under COPPA, Defendant failed to provide notice of the collection and use of the personal information and obtain verifiable consent in breach and violation thereof.

153.    Defendant is therefore estopped from relying on any statutes of limitations in defense of this action.

1

## VII.    CLASS ACTION ALLEGATIONS

2      154.    Plaintiffs re-allege and incorporate by reference all of the above allegations.

3      155.    Collectively, the State Classes described in this section are referred to herein as "the

4  Class" and their collective membership as the "Class Members."

5      156.    The Class Period is defined as July 1, 2013, to the present.

6      157.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure

7  23(a), 23(b)(2), and 23(b)(3) with respect to the Class.

8      158.    Excluded from the Class are: (a) any Judge or Magistrate Judge presiding over this

9  action and Members of their staff, as well as Members of their families; (b) Defendant and Defendant's

10  predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendant

11  or its parents have a controlling interest, as well as Defendant's current or former employees, agents,

12  officers, and directors; (c) persons who properly execute and file a timely request for exclusion from

13  the Class; (d) persons whose claims in this matter have been finally adjudicated on the merits or

14  otherwise released; (e) counsel for Plaintiffs and Defendant; and (f) the legal representatives,

15  successors, and assigns of any such excluded persons.

16  **A.    State Classes**

17      **1.    The Delaware Class**

18      159.    Plaintiff W.E., by and through their grandparent and guardian ad litem, seeks class

19  certification of a claim for violation of the Delaware Consumer Fraud Act, 6 Del. Code §§ 2511, *et*

20  *seq.*, as well  common law claims of negligence, intrusion upon seclusion, and unjust enrichment,

21  on behalf of a Delaware class defined as follows:

22  > All persons residing in the State of Delaware who were younger than 13 years old when
23  > they used Roblox from whom Roblox collected and/or used Private Information during
24  > the Class Period without first notifying their parents and obtaining verified parental
   > consent beforehand.

24      **2.    The Idaho Class**

25
26      160.    Plaintiff L.M., by and through their parent and guardian ad litem, seeks class

27  certification of a claim for violation of the Idaho Consumer Protection Act, Idaho Code Ann. §§ 48-

28

601, *et seq.*, as well as common law claims of negligence, intrusion upon seclusion, and unjust enrichment, on behalf of an Idaho class defined as follows:

> All persons residing in the State of Idaho who were younger than 13 years old when they used Roblox from whom Roblox collected and/or used Private Information during the Class Period without first notifying their parents and obtaining verified parental consent beforehand.

### 3.    The New Jersey Class

161.    Plaintiff G.G., by and through their parent and guardian ad litem, seeks class certification of a claim for violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. 56:8–1 *et seq.*, as well as common law claims of negligence, intrusion upon seclusion, and unjust enrichment, on behalf of a New Jersey class defined as follows:

> All persons residing in the State of New Jersey who were younger than 13 years old when they used Roblox from whom Roblox collected and/or used Private Information during the Class Period without first notifying their parents and obtaining verified parental consent beforehand.

### 4.    The Washington Class

162.    Plaintiff I.C., by and through their parent and guardian ad litem, seeks class certification for the violation of the Washington Consumer Protection Act ("CPA"), Wash. Rev. Code. § 19.86.010 *et seq*, as well as common law claims of negligence, intrusion upon seclusion, and unjust enrichment on behalf of a Washington class defined as follows:

> All persons residing in the State of Washington who were younger than 13 years old when they used Roblox from whom Roblox collected and/or used Private Information during the Class Period without first notifying their parents and obtaining verified parental consent beforehand.

163.    Plaintiffs reserve the right to modify or refine any of the Class definitions based upon discovery of new information and in order to accommodate any of the Court's manageability concerns.

164.    **Ascertainability**. The proposed Class is readily ascertainable because they are defined using objective criteria so as to allow Class Members to determine if they are part of a Class. Further, the Class can be identified through records maintained by Defendant.

165.    **Numerosity (Rule 23(a)(1)).** The Class is so numerous that joinder of individual Members herein is impracticable. The exact number of Class Members, as herein identified and

described, is not known, but public information indicates that Roblox has collected information on millions of children.

166. **Commonality (Rule 23(a)(2)).** Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class Members, including the following:

1.     Whether Defendant collected the Private Information of children under 13;

2.     Whether Defendant operates a website or online service directed at children under the age of 13 as defined by COPPA;

3.     Whether Defendant had knowledge it was collecting the Private Information of children under 13;

4.     Whether Defendant notified parents as required by COPPA prior to collecting the Private Information of children under 13;

5.     Whether Defendant obtained verifiable parental consent as required by COPPA prior to collecting the Private Information of children under 13;

6.     Whether the collection of Private Information of children is highly offensive to a reasonable person;

7.     Whether the collection of Private Information of children without parental consent is sufficiently serious and unwarranted as to constitute an egregious breach of social norms;

8.     Whether Defendant's conduct was unfair;

9.     Whether Defendant's conduct was unlawful;

10.    Whether Defendant's conduct violated the consumer protection acts of Delaware, Idaho, New Jersey, and Washington;

11.    Whether Plaintiffs and the Class are entitled to monetary damages, and if so what are the measure of those damages;

12.    Whether Plaintiffs and the Class are entitled to non-restitutionary disgorgement based on Defendant's unjust enrichment; and

13.     Whether Plaintiffs and the Class are entitled to injunctive or other equitable relief.

167.    **Typicality (Rule 23(a)(3)).** Plaintiffs' claims are typical of the claims of the other members of the proposed Class. Plaintiffs and Class Members (as applicable) suffered an invasion of privacy and other injuries as a result of Defendant's wrongful conduct that is uniform across the Class.

168.    **Adequacy (Rule 23(a)(4)).** Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interest that is antagonistic to those of the Class, and Defendant has no defenses unique to individual Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of Class Members, and they have the resources to do so. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other Class Members.

169.    **Substantial Benefits.** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy, and joinder of all Class Members is impracticable. The prosecution of separate actions by individual Class Members would impose heavy burdens upon the Courts and Defendant, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to Class Members, and would be dispositive of the interests of the other Class Members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. This proposed class action presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

170.    Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

171.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief, if any, that may be awarded by the Court is appropriate as to the Class as a whole.

172.    Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## VIII.    CLAIMS FOR RELIEF

## A.    DELAWARE CLAIMS

### COUNT ONE — DELAWARE NEGLIGENCE
*(Against Defendant by Delaware Plaintiff and the Delaware Class)*

173.    Plaintiff W.E., by and through their grandparent and guardian ad litem (the "Delaware Plaintiff") and Delaware Class Members incorporate the foregoing allegations as if fully set forth herein.

174.    At all relevant times, Defendant developed, set up, managed, maintained, operated, supervised, controlled, and benefited from Delaware Plaintiff's and Delaware Class Members' use of Roblox.

175.    Defendant owed Delaware Plaintiff and Delaware Class Members a duty to exercise reasonable care in Roblox's development, setup, management, maintenance, operation, supervision, and control to protect its under-13 users' personal information.

176.    Defendant also owed Delaware Plaintiff and Delaware Class Members a duty under COPPA not to collect, use, or disclose under-13 users' personal information without notifying parents and obtaining verifiable parental consent.

177.    Delaware Plaintiff and Delaware Class Members are within the class of persons that COPPA was intended to protect.

178.    Defendant also owed a special relationship duty to Delaware Plaintiff and Delaware Class Members to protect them against harm caused by Roblox. Delaware Plaintiff and Delaware Class Members, as children, are comparatively vulnerable and depend on Defendant for a safe environment on Roblox, and Defendant has the superior ability and control over Roblox to provide that safety on its

platform. The special relationship Delaware Plaintiff and Delaware Class Members have with Defendant substantially benefits Defendant through profits and growth in users and user activity. Defendant could not successfully operate without the increase in users and user activity generated by children.

179.    Defendant created Roblox and directed its activity through advertisements to minor users, including users under 13 years old. This created a special duty to exercise reasonable care to protect the minors from foreseeable harm while the minors were on Roblox.

180.    Defendant has voluntarily undertaken a responsibility to keep children safe on Roblox.

181.    Defendant is responsible not only for the result of their willful acts, but also for injuries occasioned to Delaware Plaintiff and Delaware Members by Defendant's want of ordinary care and/or skill in the management of their property.

182.    Delaware Plaintiff and Delaware Class Members were foreseeable users of Roblox.

183.    Defendant operates a website or online service directed at children under the age of 13, as defined by COPPA.

184.    Defendant had actual knowledge that children under the age of 13, such as Delaware Plaintiff and Delaware Class Members, were using and would use the Full Access Platform.

185.    Defendant invited, solicited, and encouraged the fact, extent, and manner of Delaware Plaintiff's and Delaware Class Members' use of Roblox.

186.    Defendant had actual knowledge that the use of Roblox (as developed, set up, managed, maintained, supervised, and operated by Defendant) would result in Defendant collecting and using Delaware Plaintiff's and Delaware Class Members' personal information.

187.    At all relevant times, Defendant had actual knowledge that Roblox (as developed, setup, managed, maintained, supervised, and operated by Defendant) posed unreasonable risks of harm to youth such as Delaware Plaintiff and Delaware Class Members through the collection, use, and/or disclosure of their personal information. Those risks were known and knowable.

188.    Defendant had actual knowledge that their under-13 users would attempt to create regular accounts instead of only trying to create under-13 accounts.

189.    Defendant had actual knowledge that when under-13 users created Full Access Platform accounts, their personal information would be treated without the adequate protections warranted for personal information of under-13 users online.

190.    Defendant had actual knowledge that its "age gate" features were not reasonably adequate to protect the privacy of children's information on Roblox.

191.    Due to Defendant's control over how youth set up accounts on Roblox, Defendant injured Delaware Plaintiff and Delaware Class Members by violating their privacy.

192.    Defendant had actual knowledge that it collected personal information as defined by COPPA from users under the age of 13.

193.    Defendant could have avoided Delaware Plaintiff's and Delaware Class Members' injuries with minimal cost, including, for example, by providing direct parental notice and requiring verifiable parental consent for its users.

194.    Imposing a duty on Defendant would benefit the community at large.

195.    Imposing a duty on Defendant would not be burdensome to it because it has the technological and financial means to avoid the risks of harm to Delaware Plaintiff and Delaware Class Members.

196.    Defendant owed a heightened duty of care to youth users of Roblox because children have a diminished capacity to understand how companies collect and use their personal information and for what purpose. Additionally, Defendant owed a heightened duty of care to youth users of Roblox because it interacts directly with children outside of the immediate oversight of their parents. Defendant was at all times the more sophisticated party and better positioned to understand children's privacy rights and their obligations to protect those rights adequately.

197.    Defendant breached its duty of care that it owed Delaware Plaintiff and Delaware Class Members through their affirmative malfeasance, actions, business decisions, and policies in Roblox's development, setup, management, maintenance, operation, supervision, and control. These breaches are based on Defendant's own actions in managing their own property—Roblox—that they made available to the public, independent of any actions taken by a third party. Those breaches include, but are not limited to:

> A.    Facilitating use of Roblox by youth under the age of 13, including by adopting protocols that do not adequately verify the age or identity of users and/or by adopting ineffective age and identity verification protocols;

> B.    Knowingly collecting personal information from youth under the age of 13 in knowing or reckless disregard of the fact that direct notice had not been provided to parents and verifiable consent had not been obtained from parents; and

> C.    Willfully ignoring that significant numbers of under-13 users were maintaining Full Access Platform Roblox accounts.

198.    Defendant breached its duty of care that it owed to Delaware Plaintiff and Delaware Class Members through its non-feasance, failure to act, and omissions in the development, setup, management, maintenance, operation, supervision, and control of Roblox. These breaches are based on the Defendant's actions in managing their property—Roblox—that it made available to the public, independent of any actions taken by a third party. Those breaches include:

> A.    Failing to implement effective protocols to screen users under the age of 13 from the Full Access Platform;

> B.    Failing to implement effective protocols to prevent the collecting, sharing, and selling of the personal information of users under the age of 13 without prior affirmative authorization; and

> C.    Failing to implement effective parental controls.

199.    These breaches also violate COPPA since Defendant collects, uses, and discloses under-13 users' personal information without notifying parents and obtaining verifiable parental consent.

200.    Defendant's violation of COPPA constitutes negligence per se.

201.    A reasonable company under the same or similar circumstances as Defendant would have developed, set up, managed, maintained, supervised, and operated its platforms in a manner that is safer for and more protective of youth users like Delaware Plaintiff and Delaware Class Members.

202.    At all relevant times, Delaware Plaintiff and Delaware Class Members used Roblox in the manner it was intended to be used.

203. As a direct and proximate result of Defendant's breach of one or more of its duties, Delaware Plaintiff and Delaware Class Members were harmed by Defendant's violation of Delaware Plaintiff's and Delaware Class Members' privacy and the loss of control over when, how, and for what purpose their personal information is collected, used, and disclosed.

204. The harm to the Delaware Plaintiff and Delaware Class Members is the type of harm that COPPA was intended to prevent.

205. The Delaware Plaintiff and Delaware Class Members do not allege any harm or injury constituting a personal injury or emotional distress and do not seek damages based on those types of injuries.

206. Defendant's breach of one or more of their duties was a substantial factor in causing harms and injuries to Delaware Plaintiff and Delaware Class Members.

207. But for Defendant's violation of the applicable laws and regulations related to COPPA, Delaware Plaintiff's and Delaware Class Members' personal information would not have been used, collected, or disclosed to third parties.

208. As a direct and proximate result of Defendant's negligence, Delaware Plaintiff and Delaware Class Members have been injured and are entitled to damages in an amount to be proven at trial.

209. Delaware Plaintiff demands judgment against Defendant for injunctive relief and for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

### COUNT TWO — DELAWARE CONSUMER PROTECTION ACT, 6 DEL. CODE §§ 2511, *ET SEQ.*
#### (Against Defendant by Delaware Plaintiff and the Delaware Class)

210. The Delaware Plaintiff re-alleges and incorporates by reference herein all of the allegations contained above.

211. The Delaware Plaintiff, the Delaware Class Members, and Roblox are "persons" within the meaning of 6 Del. Code § 2511(7).

212. Roblox offers "objects, wares, goods, commodities, intangibles, real estate or services" for "sale" within the meaning of 6 Del. Code § 2511(6), (8).

213.     Roblox engaged in consumer-oriented conduct by offering and promoting its Roblox social media platform.

214.     Delaware's Consumer Protection Act ("DECPA") declares that "[t]he act, use, or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale, lease, receipt, or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is an unlawful practice." 6 Del. Code Ann. § 2513.

215.     The DECPA defines "unfair practice" as "any act or practice that causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition. In determining whether an act or practice is unfair, violations of public policy as established by law, regulation, or judicial decision applicable in this State may be considered as evidence of substantial injury." 6 Del. Code § 2511(9).

216.     The DECPA instructs that "that this subchapter shall be liberally construed and applied to promote its underlying purposes and policies." 6 Del. Code Ann. § 2512.

217.     Roblox violated the DECPA by engaging in the "unlawful" or "unfair" business acts and practices alleged previously, and as further specified below.

218.     Roblox engaged in "unlawful" or "unfair" business acts and/or practices by violating COPPA and the COPPA Rule.

219.     Roblox violated Sections 312.3, 312.4, and 312.5 of COPPA, 16 C.F.R. §§ 312.3-5, by collecting and using personal information from Delaware Plaintiff and Delaware Class Members without notifying their parents and obtaining verifiable parental consent.

220.     Roblox's business practices alleged herein are unethical, unscrupulous, and substantially injurious to children, and thus constitute an unfair practice under the DECPA. The harm these practices caused to Delaware Plaintiff and Delaware Class Members outweigh their utility, if any.

221.     As a direct and proximate result of Roblox's unfair business acts and practices, Delaware Plaintiff and Delaware Class Members were injured and lost money or property.

222.    First, as a direct and proximate result of Roblox's unfair business acts and practices, Delaware Plaintiff and Delaware Class Members suffered "benefit-of-the-bargain" injuries and damages. Delaware Plaintiff and Delaware Class Members did not receive the full benefit of the bargain, and instead received services from Roblox that were less valuable than the services they would have received if Roblox had abided by COPPA.

223.    Delaware Plaintiff and Delaware Class Members, therefore, were damaged in an amount at least equal to the difference in value of the Roblox service that Delaware Plaintiff and Delaware Class Members received (where Roblox collected and used children's personal information without notifying parents or gaining their parents' consent) and the value of the Roblox service that Delaware Plaintiff and Delaware Class Members would have received if Roblox had abided by COPPA (and not collected and used children's personal information without notifying parents or gaining their parents' consent).

224.    Second, as a direct and proximate result of Roblox's unlawful and unfair business acts and practices, Delaware Plaintiff and Delaware Class Members suffered "right to exclude" injuries and damages.

225.    Delaware Plaintiff and Delaware Class Members have a property interest in the personal information collected by Roblox. Delaware Plaintiff and Delaware Class Members suffered an economic injury because they were deprived of their right to exclude Roblox from their personal information.

226.    Delaware Plaintiff's and Delaware Class Members' damages may also be measured by the amount of monetary compensation that Roblox would have to provide to parents to gain their consent to collect and use their children's personal information.

227.    Delaware Plaintiff and Delaware Class Members seek restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief, actual and punitive damages, costs, and other relief allowable under 6 Del. Code Ann. § 2525.

## COUNT THREE — DELAWARE INTRUSION UPON SECLUSION
### *(Against Defendant by Delaware Plaintiff and the Delaware Class)*

228.    The Delaware Plaintiff and Delaware Class Members re-allege the foregoing allegations as if fully set forth herein.

229.    Under the laws of Delaware, the Delaware Plaintiff and Delaware Class Members assert a claim for intrusion upon seclusion.

230.    The Delaware Plaintiff and Delaware Class Members possess a legally protected interest in their Private Information, including their personal information as defined by COPPA.

231.    The Delaware Plaintiff and Delaware Class Members maintained a reasonable expectation that when using Roblox, Defendant would not collect and/or use their Private Information.

232.    The Delaware Plaintiff and Delaware Class Members' reasonable expectation of privacy was supported by COPPA's prohibition on Roblox collecting and/or using personal information from children under 13 years of age unless Roblox directly notified their parents and obtained verifiable parental consent.

233.    Roblox intentionally intruded upon the seclusion of the Delaware Plaintiff and Delaware Class Members by improperly collecting and using their personal information without obtaining consent.

234.    Roblox intentionally intruded upon the Delaware Plaintiff's and Delaware Class Members' seclusion by improperly collecting and using their personal information, without providing direct notice to their parents or obtaining verifiable parental consent, as required by COPPA.

235.    Roblox's intrusion upon the seclusion of the Delaware Plaintiff and Delaware Class Members was substantial, and would be highly offensive to a reasonable person, constituting an egregious breach of social norms, as is evidenced by consumer surveys, and academic studies detailing the harms of tracking children online, centuries of common law, state and federal statutes and regulations including COPPA and FTC regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, and scholarly literature on consumers' reasonable expectations.

236.    Roblox's intrusion upon the seclusion of the Delaware Plaintiff and Delaware Class Members was also substantial and highly offensive to a reasonable person, constituting an egregious breach of social norms, because Roblox uses the collected personal information for an improper purpose, including by targeting the Delaware Plaintiff and Delaware Class Members with behavioral advertising and collecting persistent identifiers.

237.    Roblox's intrusion upon the seclusion of the Delaware Plaintiff's and Delaware Class Members' privacy also breached the Delaware Plaintiff's and Delaware Class Members' own subjective expectations of privacy, which are accepted by society as reasonable, as embodied in COPPA and its implanting regulations.

238.    None of the Delaware Plaintiff and Delaware Class Members, nor their parents and/or guardians, consented to Defendant's collection and use of their personal information.

239.    The Delaware Plaintiff and Delaware Class Members suffered actual and concrete injury as a result of Defendant's intrusion upon their seclusion.

240.    The Delaware Plaintiff and Delaware Class Members seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate them for the harms to their privacy interests and risk of future invasions of privacy, restitution, disgorgement of profits made by Roblox as a result of its invasion of the Delaware Plaintiff's and Delaware Class Members' privacy, actual and punitive damages, and any other relief that the Court may deem just and proper.

## COUNT FOUR — DELAWARE UNJUST ENRICHMENT CLAIM
### (Against Defendant by Delaware Plaintiff and the Delaware Class)

241.    The Delaware Plaintiff and Delaware Class Members incorporate and reallege all allegations set forth above.

242.    Under the laws of Delaware, the Delaware Plaintiff and Delaware Class Members assert a claim for unjust enrichment.

243.    By virtue of the unlawful and unfair conduct alleged herein, Roblox has realized millions of dollars in revenue from their collection and use of the Private Information of the Delaware Plaintiff and Delaware Class Members through behavioral advertising and commercialization of the Delaware Plaintiff's personal information.

244.    Roblox's ill-gotten gains were monetary benefits conferred upon Roblox by the Delaware Plaintiff and Delaware Class Members. It would be inequitable and unjust to permit Roblox to retain the economic benefits it obtained through advertising and commercialization derived from the Private Information of the Delaware Plaintiff and Delaware Class Members.

245.    Roblox will be unjustly enriched if it is permitted to retain the economic benefits conferred upon it by the Delaware Plaintiff and Delaware Class Members through its unlawful, unfair, unauthorized, and impermissible use of the Private Information of the Delaware Plaintiff and Delaware Class Members, and allowing Roblox to retain the profits from their unlawful, unauthorized, and impermissible use of the Private Information of the Delaware Plaintiff and Delaware Class Members would be unjust and contrary to public policy.

246.    The Delaware Plaintiff and Delaware Class Members are therefore entitled to recover the amounts realized by Roblox at the expense of the Delaware Plaintiff and Delaware Class Members.

247.    Roblox knew and appreciated that it was receiving monetary benefits due to the Delaware Plaintiff and Delaware Class Members having Roblox accounts. Roblox's business model includes monetizing Roblox accounts by serving them with targeted behavioral advertising.

248.    The Delaware Plaintiff and Delaware Class Members have no adequate remedy at law. They do not seek to recover in this claim for their own economic harm and have no adequate remedy at law that would divest Roblox of its ill-gotten and unjust profits. Furthermore, unjust enrichment is more prompt, efficient, and certain than the monetary damages that Plaintiff seeks.

249.    To the extent that money damages, if available, would constitute an adequate remedy at law barring recovery under this claim, the Delaware Plaintiff and Delaware Class Members assert their claim for non-restitutionary disgorgement as an alternative remedy.

250.    The Delaware Plaintiff and Delaware Class Members are entitled to non-restitutionary disgorgement of Roblox's ill-gotten gains, and/or the imposition of a constructive trust to recover the amount of Roblox's ill-gotten gains.

1

**B.    IDAHO CLAIMS**

2

### COUNT FIVE — IDAHO NEGLIGENCE
*(Against Defendant by Idaho Plaintiff and the Idaho Class)*

3

4

251.    Plaintiff L.M., by and through their parent and guardian ad litem (the "Idaho Plaintiff"),

5

and Idaho Class Members incorporate the foregoing allegations as if fully set forth herein.

6

252.    At all relevant times, Defendant developed, set up, managed, maintained, operated,

7

supervised, controlled, and benefited from Idaho Plaintiff's and Idaho Class Members' use of Roblox.

8

253.    Defendant owed Idaho Plaintiff and Idaho Class Members a duty to exercise reasonable

9

care in Roblox's development, setup, management, maintenance, operation, supervision, and control

10

to protect its under-13 users' personal information.

11

254.    Defendant also owed Idaho Plaintiff and Idaho Class Members a duty under COPPA

12

not to collect, use, or disclose under-13 users' personal information without notifying parents and

13

obtaining verifiable parental consent.

14

255.    Idaho Plaintiff and Idaho Class Members are within the class of persons that COPPA

15

was intended to protect.

16

256.    Defendant also owed a special relationship duty to Idaho Plaintiff and Idaho Class

17

Members to protect them against harm caused by Roblox. Idaho Plaintiff and Idaho Class Members,

18

as children, are comparatively vulnerable and depend on Defendant for a safe environment on Roblox,

19

and Defendant has the superior ability and control over Roblox to provide that safety on its app. The

20

special relationship Idaho Plaintiff and Idaho Class Members have with Defendant substantially

21

benefits Defendant through profits and growth in users and user activity. Defendant could not

22

successfully operate without the increase in users and user activity generated by children.

23

257.    Defendant created Roblox and directed its activity through advertisements to minor

24

users, including users under 13 years old. This created a special duty to exercise reasonable care to

25

protect the minors from foreseeable harm while the minors were on Roblox.

26

258.    Defendant has voluntarily undertaken a responsibility to keep children safe on Roblox.

27

28

259.    Defendant is responsible not only for the result of their willful acts, but also for injuries occasioned to Idaho Plaintiff and Idaho Members by Defendant's want of ordinary care and/or skill in the management of their property.

260.    Idaho Plaintiff and Idaho Class Members were foreseeable users of Roblox.

261.    Defendant operates a website or online service directed at children under the age of 13, as defined by COPPA.

262.    Defendant had actual knowledge that children under the age of 13, such as Idaho Plaintiff and Idaho Class Members, were using and would use Full Access Platform.

263.    Defendant invited, solicited, and encouraged the fact, extent, and manner of Idaho Plaintiff's and Idaho Class Members' use of Roblox.

264.    Defendant had actual knowledge that the use of Roblox (as developed, set up, managed, maintained, supervised, and operated by Defendant) would result in Defendant collecting and using Idaho Plaintiff's and Idaho Class Members' personal information.

265.    At all relevant times, Defendant had actual knowledge that Roblox (as developed, setup, managed, maintained, supervised, and operated by that Defendant) posed unreasonable risks of harm to youth such as Idaho Plaintiff and Idaho Class Members through the collection, use, and/or disclosure of their personal information. Those risks were known and knowable.

266.    Defendant had actual knowledge that their under-13 users would attempt to create regular accounts instead of only trying to create under-13 accounts.

267.    Defendant had actual knowledge that when under-13 users created Full Access Platform accounts, their personal information would be treated without the adequate protections warranted for personal information of under-13 users online.

268.    Defendant had actual knowledge that its "age gate" features were not reasonably adequate to protect the privacy of children's information on Roblox.

269.    Due to Defendant's control over how youth set up accounts on Roblox, Defendant injured Idaho Plaintiff and Idaho Class Members by violating their privacy.

270.    Defendant had actual knowledge that it collected personal information as defined by COPPA from users under the age of 13.

271.    Defendant could have avoided Idaho Plaintiff's and Idaho Class Members' injuries with minimal cost, including, for example, by providing direct parental notice and requiring verifiable parental consent for its users.

272.    Imposing a duty on Defendant would benefit the community at large.

273.    Imposing a duty on Defendant would not be burdensome to it because it has the technological and financial means to avoid the risks of harm to Idaho Plaintiff and Idaho Class Members.

274.    Defendant owed a heightened duty of care to youth users of Roblox because children have a diminished capacity to understand how companies collect and use their personal information and for what purpose. Additionally, Defendant owed a heightened duty of care to youth users of Roblox because it interacts directly with children out of the immediate oversight of their parents. Defendant was at all times the more sophisticated party and better positioned to understand children's privacy rights and their obligations to protect those rights adequately.

275.    Defendant breached its duty of care that it owed Idaho Plaintiff and Idaho Class Members through their affirmative malfeasance, actions, business decisions, and policies in Roblox's development, setup, management, maintenance, operation, supervision, and control. These breaches are based on Defendant's own actions in managing their own property—Roblox—that they made available to the public, independent of any actions taken by a third party. Those breaches include, but are not limited to:

A.    Facilitating use of Roblox by youth under the age of 13, including by adopting protocols that do not adequately verify the age or identity of users or by adopting ineffective age and identity verification protocols;

B.    Knowingly collecting personal information from youth under the age of 13 in knowing or reckless disregard of the fact that direct notice had not been provided to parents and verifiable consent had not been obtained from parents; and

C.    Willfully ignoring that significant numbers of under-13 users were maintaining Full Access Platform Roblox accounts.

276.    Defendant breached its duty of care that it owed to Idaho Plaintiff and Idaho Class Members through its non-feasance, failure to act, and omissions in the development, setup, management, maintenance, operation, supervision, and control of Roblox. These breaches are based on the Defendant's actions in managing their property—Roblox—that it made available to the public, independent of any actions taken by a third party. Those breaches include:

      A.    Failing to implement effective protocols to screen users under the age of 13 from the Full Access Platform;

      B.    Failing to implement effective protocols to prevent the collecting, sharing, and selling of the personal information of users under the age of 13 without prior affirmative authorization; and

      C.    Failing to implement effective parental controls.

277.    These breaches also violate COPPA since Defendant collects, uses, and discloses under-13 users' personal information without notifying parents and obtaining verifiable parental consent.

278.    Defendant's violation of COPPA constitutes negligence per se.

279.    A reasonable company under the same or similar circumstances as Defendant would have developed, set up, managed, maintained, supervised, and operated its platforms in a manner that is safer for and more protective of youth users like Idaho Plaintiff.

280.    At all relevant times, Idaho Plaintiff and Idaho Class Members used Roblox in the manner it was intended to be used.

281.    As a direct and proximate result of Defendant's breach of one or more of its duties, Idaho Plaintiff and Idaho Class Members were harmed by Defendant's violation of Idaho Plaintiff's and Idaho Class Members' privacy and the loss of control over when, how, and for what purpose their personal information is collected, used, and disclosed.

282.    The harm to the Idaho Plaintiff and Idaho Class Members is the type of harm that COPPA was intended to prevent.

283.    The Idaho Plaintiff and Idaho Class Members do not allege any harm or injury constituting a personal injury or emotional distress and do not seek damages based on those types of injuries.

284.    Defendant's breach of one or more of their duties was a substantial factor in causing harms and injuries to Idaho Plaintiff and Idaho Class Members.

285.    But for Defendant's violation of the applicable laws and regulations related to COPPA, Idaho Plaintiff's and Idaho Class Members' personal information would not have been used, collected, or disclosed to third parties.

286.    As a direct and proximate result of Defendant's negligence, Idaho Plaintiff and Idaho Class Members have been injured and are entitled to damages in an amount to be proven at trial.

287.    Idaho Plaintiff demands judgment against Defendant for injunctive relief and for compensatory damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT SIX — IDAHO CONSUMER PROTECTION ACT, IDAHO CODE ANN. §§ 48-601, ET SEQ.**
*(Against Defendant by Idaho Plaintiff and the Idaho Class)*

288.    The Idaho Plaintiff re-alleges and incorporates by reference herein all of the allegations contained above.

289.    The Idaho Plaintiff, the Idaho Class Members, and Roblox are "persons" within the meaning of Idaho Code Ann. § 48-602(1).

290.    Roblox offers "goods" or "services" in the course of "'trade' and 'commerce'" within the meaning of Idaho Code Ann. §§ 48-602(2), (6), (7).

291.    Roblox engaged in consumer-oriented conduct by offering and promoting its Roblox social media platform.

292.    Idaho's Consumer Protection Act, Idaho Code Ann. §§ 48-601, *et seq.* ("IDCPA") declares that "[a]ny person who purchases or leases goods or services and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by this chapter, may treat any agreement incident thereto as voidable or, in the alternative, may bring an action to recover actual damages or one thousand dollars ($1,000), whichever is the greater[.]" Idaho Code Ann. § 48-608(1).

293.    The IDCPA instructs that "[t]his act is to be construed uniformly with federal law and regulations." Idaho Code Ann. § 48-618.

294.    Roblox violated the IDCPA through unfair or deceptive acts or practices, within the meaning of Idaho Code Ann. § 48-603, including by falsely representing that its goods or services are COPPA compliant or COPPA-certified, causing a likelihood of confusion. *See* Idaho Code Ann. § 48-603(2), (3), (5), (17).

295.    Roblox further violated the IDCPA through unconscionable methods in the course of trade or commerce, within the meaning of Idaho Code Ann. § 48-603C, because its failure to comply with COPPA and protect the privacy interests of children would outrage or offend the public conscience. Idaho Code Ann. §§ 48-603C(2)(c), § 48-603(18).

296.    Roblox violated Sections 312.3, 312.4, and 312.5 of COPPA, 16 C.F.R. §§ 312.3-5, by collecting and using personal information from Idaho Plaintiff and Idaho Class Members without notifying their parents and obtaining verifiable parental consent.

297.    As a direct and proximate result of Roblox's unfair business acts and practices, Idaho Plaintiff and Idaho Class Members were injured and lost money or property.

298.    First, as a direct and proximate result of Roblox's unfair business acts and practices, Idaho Plaintiff and Idaho Class Members suffered "benefit-of-the-bargain" injuries and damages. Idaho Plaintiff and Idaho Class Members did not receive the full benefit of the bargain, and instead received services from Roblox that were less valuable than the services they would have received if Roblox had abided by COPPA.

299.    Idaho Plaintiff and Idaho Class Members, therefore, were damaged in an amount at least equal to the difference in value of the Roblox service that Idaho Plaintiff and Idaho Class Members received (where Roblox collected and used children's personal information without notifying parents or gaining their parents' consent) and the value of the Roblox service that Idaho Plaintiff and Idaho Class Members would have received if Roblox had abided by COPPA (and not collected and used children's personal information without notifying parents or gaining their parents' consent).

300.    Second, as a direct and proximate result of Roblox's unlawful and unfair business acts and practices, Idaho Plaintiff and Idaho Class Members suffered "right to exclude" injuries and damages.

301.    Idaho Plaintiff and Idaho Class Members have a property interest in the personal information collected by Roblox. Idaho Plaintiff and Idaho Class Members suffered an economic injury because they were deprived of their right to exclude Roblox from their personal information.

302.    Idaho Plaintiff's and Idaho Class Members' damages may also be measured by the amount of monetary compensation that Roblox would have to provide to parents to gain their consent to collect and use their children's personal information.

303.    Idaho Plaintiff and Idaho Class Members seek restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief, actual damages, statutory damages, attorney's fees, costs, and other relief allowable under Idaho Code Ann. § 48-608.

## COUNT SEVEN — IDAHO INVASION OF PRIVACY
### (Against Defendant by Idaho Plaintiff and the Idaho Class)

304.    The Idaho Plaintiff and Idaho Class Members re-allege the foregoing allegations as if fully set forth herein.

305.    Under the laws of Idaho, the Idaho Plaintiff and Idaho Class Members assert a claim for intrusion upon seclusion.

306.    The Idaho Plaintiff and Idaho Class Members possess a legally protected interest in their Private Information, including their personal information as defined by COPPA.

307.    The Idaho Plaintiff and Idaho Class Members maintained a reasonable expectation that, when using Roblox, Defendant would not collect and/or use their Private Information.

308.    The Idaho Plaintiff and Idaho Class Members' reasonable expectation of privacy was supported by COPPA's prohibition on Roblox collecting and/or using personal information from children under 13 years of age unless Roblox directly notified their parents and obtained verifiable parental consent.

309.    Roblox intentionally intruded upon the seclusion of the Idaho Plaintiff and Idaho Class Members by improperly collecting and using their personal information without obtaining consent.

310.    Roblox intentionally intruded upon the Idaho Plaintiff's and Idaho Class Members' seclusion by improperly collecting and using their personal information, without providing direct notice to their parents or obtaining verifiable parental consent, as required by COPPA.

311.    Roblox's intrusion upon the seclusion of the Idaho Plaintiff and Idaho Class Members was substantial, and would be highly offensive to a reasonable person, constituting an egregious breach of social norms, as is evidenced by consumer surveys and academic studies detailing the harms of tracking children online, centuries of common law, state and federal statutes and regulations including COPPA and FTC regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, and scholarly literature on consumers' reasonable expectations.

312.    Roblox's intrusion upon the seclusion of the Idaho Plaintiff and Idaho Class Members was also substantial and highly offensive to a reasonable person, constituting an egregious breach of social norms because Roblox uses the collected personal information for an improper purpose, including by targeting the Idaho Plaintiff and Idaho Class Members with behavioral advertising and collecting persistent identifiers.

313.    Roblox's intrusion upon the seclusion of the Idaho Plaintiff and Idaho Class Members' privacy also breached the Idaho Plaintiff and Idaho Class Members' own subjective expectations of privacy, which are accepted by society as reasonable, as embodied in COPPA and its implementing regulations.

314.    None of the Idaho Plaintiff and Idaho Class Members, nor their parents and/or guardians, consented to Defendant's collection and use of their personal information.

315.    The Idaho Plaintiff and Idaho Class Members suffered actual and concrete injury as a result of Defendant's intrusion upon their seclusion.

316.    The Idaho Plaintiff and Idaho Class Members seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests and risk of future invasions of privacy, restitution, disgorgement of profits made by Roblox as a result of its invasion of the Idaho Plaintiff and Idaho Class Members' privacy, actual damages, and any other relief that the Court may deem just and proper.

### COUNT EIGHT — IDAHO UNJUST ENRICHMENT CLAIM
#### *(Against Defendant by Idaho Plaintiff and the Idaho Class)*

317.    The Idaho Plaintiff and Idaho Class Members incorporate and reallege all allegations set forth above.

318. Under the laws of Idaho, the Idaho Plaintiff and Idaho Class Members assert a claim for unjust enrichment.

319. By virtue of the unlawful and unfair conduct alleged herein, Roblox has realized millions of dollars in revenue from their collection and use of the Private Information of the Idaho Plaintiff and Idaho Class Members through behavioral advertising and commercialization of Idaho Plaintiff's personal information.

320. Roblox's ill-gotten gains were monetary benefits conferred upon Roblox by the Idaho Plaintiff and Idaho Class Members. It would be inequitable and unjust to permit Roblox to retain the economic benefits it obtained through advertising and commercialization derived from the Private Information of the Idaho Plaintiff and Idaho Class Members.

321. Roblox will be unjustly enriched if it is permitted to retain the economic benefits conferred upon it by the Idaho Plaintiff and Idaho Class Members through its unlawful, unfair, unauthorized, and impermissible use of the Private Information of the Idaho Plaintiff and Idaho Class Members, and allowing Roblox to retain the profits from their unlawful, unauthorized, and impermissible use of the Private Information of the Idaho Plaintiff and Idaho Class Members would be unjust and contrary to public policy.

322. The Idaho Plaintiff and Idaho Class Members are therefore entitled to recover the amounts realized by Roblox at the expense of the Idaho Plaintiff and Idaho Class Members.

323. Roblox knew and appreciated that it was receiving monetary benefits due to the Idaho Plaintiff and Idaho Class Members having Roblox accounts. Roblox's business model includes monetizing Roblox accounts by serving them with targeted behavioral advertising.

324. The Idaho Plaintiff and Idaho Class Members have no adequate remedy at law. They do not seek to recover in this claim for their own economic harm and have no adequate remedy at law that would divest Roblox of its ill-gotten and unjust profits. Furthermore, unjust enrichment is more prompt, efficient, and certain than the monetary damages that Plaintiff seek.

325. To the extent that money damages, if available, would constitute an adequate remedy at law barring recovery under this claim, the Idaho Plaintiff and Idaho Class Members assert their claim for non-restitutionary disgorgement as an alternative remedy.

326.    The Idaho Plaintiff and Idaho Class Members are entitled to non-restitutionary disgorgement of Roblox's ill-gotten gains, and/or the imposition of a constructive trust to recover the amount of Roblox's ill-gotten gains.

## C.    NEW JERSEY CLAIMS

### COUNT NINE — NEW JERSEY NEGLIGENCE
*(Against Defendant by New Jersey Plaintiff and the New Jersey Class)*

327.    Plaintiff G.G., by and through their parent and guardian ad litem (the "New Jersey Plaintiff") and New Jersey Class Members incorporate the foregoing allegations as if fully set forth herein.

328.    At all relevant times, Defendant developed, set up, managed, maintained, operated, supervised, controlled, and benefited from New Jersey Plaintiff's and New Jersey Class Members' use of Roblox.

329.    Defendant owed New Jersey Plaintiff and New Jersey Class Members a duty to exercise reasonable care in Roblox's development, setup, management, maintenance, operation, supervision, and control to protect its under-13 users' personal information.

330.    Defendant also owed New Jersey Plaintiff and New Jersey Class Members a duty under COPPA not to collect, use, or disclose under-13 users' personal information without notifying parents and obtaining verifiable parental consent.

331.    New Jersey Plaintiff and New Jersey Class Members are within the class of persons that COPPA was intended to protect.

332.    Defendant also owed a special relationship duty to New Jersey Plaintiff and New Jersey Class Members to protect them against harm caused by Roblox. New Jersey Plaintiff and New Jersey Class Members, as children, are comparatively vulnerable and depend on Defendant for a safe environment on Roblox, and Defendant has the superior ability and control over Roblox to provide that safety on its app. The special relationship New Jersey Plaintiff and New Jersey Class Members have with Defendant substantially benefits Defendant through profits and growth in users and user activity.

Defendant could not successfully operate without the increase in users and user activity generated by children.

333.    Defendant created Roblox and directed its activity through advertisements to minor users, including users under 13 years old. This created a special duty to exercise reasonable care to protect the minors from foreseeable harm while the minors were on Roblox.

334.    Defendant has voluntarily undertaken a responsibility to keep children safe on Roblox.

335.    Defendant is responsible not only for the result of their willful acts, but also for injuries occasioned to New Jersey Plaintiff and New Jersey Members by Defendant's want of ordinary care and/or skill in the management of their property.

336.    New Jersey Plaintiff and New Jersey Class Members were foreseeable users of Roblox.

337.    Defendant operates a website or online service directed at children under the age of 13, as defined by COPPA.

338.    Defendant had actual knowledge that children under the age of 13, such as New Jersey Plaintiff and New Jersey Class Members, were using and would use the Full Access Platform.

339.    Defendant invited, solicited, and encouraged the fact, extent, and manner of New Jersey Plaintiff's and New Jersey Class Members' use of Roblox.

340.    Defendant had actual knowledge that the use of Roblox (as developed, set up, managed, maintained, supervised, and operated by Defendant) would result in Defendant collecting and using New Jersey Plaintiff's and New Jersey Class Members' personal information.

341.    At all relevant times, Defendant had actual knowledge that Roblox (as developed, setup, managed, maintained, supervised, and operated by that Defendant) posed unreasonable risks of harm to youth such as New Jersey Plaintiff and New Jersey Class Members through the collection, use, and/or disclosure of their personal information. Those risks were known and knowable.

342.    Defendant had actual knowledge that their under-13 users would attempt to create regular accounts instead of only trying to create under-13 accounts.

343.    Defendant had actual knowledge that when under-13 users created Full Access Platform accounts, their personal information would be treated without the adequate protections warranted for personal information of under-13 users online.

344.    Defendant had actual knowledge that its "age gate" features were not reasonably adequate to protect the privacy of children's information on Roblox.

345.    Due to Defendant's control over how youth set up accounts on Roblox, Defendant injured New Jersey Plaintiff and New Jersey Class Members by violating their privacy.

346.    Defendant had actual knowledge that it collected personal information as defined by COPPA from users under the age of 13.

347.    Defendant could have avoided New Jersey Plaintiff's and New Jersey Class Members' injuries with minimal cost, including, for example, by providing direct parental notice and requiring verifiable parental consent for its users.

348.    Imposing a duty on Defendant would benefit the community at large.

349.    Imposing a duty on Defendant would not be burdensome to Roblox because it has the technological and financial means to avoid the risks of harm to New Jersey Plaintiff and New Jersey Class Members.

350.    Defendant owed a heightened duty of care to youth users of Roblox because children have a diminished capacity to understand how companies collect and use their personal information and for what purpose. Additionally, Defendant owed a heightened duty of care to youth users of Roblox because it interacts directly with children out of the immediate oversight of their parents. Defendant was at all times the more sophisticated party and better positioned to understand children's privacy rights and their obligations to protect those rights adequately.

351.    Defendant breached its duty of care that it owed New Jersey Plaintiff and New Jersey Class Members through their affirmative malfeasance, actions, business decisions, and policies in Roblox's development, setup, management, maintenance, operation, supervision, and control. These breaches are based on Defendant's own actions in managing their own property—Roblox—that they made available to the public, independent of any actions taken by a third party. Those breaches include, but are not limited to:

     A.    Facilitating use of Roblox by youth under the age of 13, including by adopting protocols that do not adequately verify the age or identity of users or by adopting ineffective age and identity verification protocols;

B.    Knowingly collecting personal information from youth under the age of 13 in knowing or reckless disregard of the fact that direct notice had not been provided to parents and verifiable consent had not been obtained from parents; and

C.    Willfully ignoring that significant numbers of under-13 users were maintaining Full Access Platform Roblox accounts.

352.    Defendant breached its duty of care that it owed to New Jersey Plaintiff and New Jersey Class Members through its non-feasance, failure to act, and omissions in the development, setup, management, maintenance, operation, supervision, and control of Roblox. These breaches are based on the Defendant's actions in managing their property—Roblox—that it made available to the public, independent of any actions taken by a third party. Those breaches include:

A.    Failing to implement effective protocols to screen users under the age of 13 from the Full Access Platform;

B.    Failing to implement effective protocols to prevent the collecting, sharing, and selling of the personal information of users under the age of 13 without prior affirmative authorization; and

C.    Failing to implement effective parental controls.

353.    These breaches also violate COPPA since Defendant collects, uses, and discloses under-13 users' personal information without notifying parents and obtaining verifiable parental consent.

354.    Defendant's violation of COPPA constitutes negligence per se.

355.    A reasonable company under the same or similar circumstances as Defendant would have developed, set up, managed, maintained, supervised, and operated its platforms in a manner that is safer for and more protective of youth users like New Jersey Plaintiff.

356.    At all relevant times, New Jersey Plaintiff and New Jersey Class Members used Roblox in the manner it was intended to be used.

357.    As a direct and proximate result of Defendant's breach of one or more of its duties, New Jersey Plaintiff and New Jersey Class Members were harmed by Defendant's violation of New Jersey Plaintiff's and New Jersey Class Members' privacy and the loss of control over when, how, and for what purpose their personal information is collected, used, and disclosed.

358. The harm to the New Jersey Plaintiff and New Jersey Class Members is the type of harm that COPPA was intended to prevent.

359. The New Jersey Plaintiff and New Jersey Class Members do not allege any harm or injury constituting a personal injury or emotional distress and do not seek damages based on those types of injuries.

360. Defendant's breach of one or more of their duties was a substantial factor in causing harms and injuries to New Jersey Plaintiff and New Jersey Class Members.

361. But for Defendant's violation of the applicable laws and regulations related to COPPA, New Jersey Plaintiff's and New Jersey Class Members' personal information would not have been used, collected, or disclosed to third parties.

362. As a direct and proximate result of Defendant's negligence, New Jersey Plaintiff and New Jersey Class Members have been injured and are entitled to damages in an amount to be proven at trial.

363. New Jersey Plaintiff demand judgment against Defendant for injunctive relief and for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT TEN — NEW JERSEY CONSUMER FRAUD ACT, N.J. STAT. ANN. 56:8–1 *ET SEQ*.**
*(Against Defendant by New Jersey Plaintiff and the New Jersey Class)*

364. The New Jersey Plaintiff re-alleges and incorporates by reference herein all of the allegations contained above.

365. The New Jersey Plaintiff, the New Jersey Class Members, and Roblox are "persons" within the meaning of N.J. Stat. Ann. 56:8-1(d).

366. Roblox offers "merchandise" within the meaning of N.J. Stat. Ann. 56:8-1(c). Roblox offers goods or services for "sale" within the meaning of N.J. Stat. Ann. 56:8-1(e).

367. Roblox engaged in consumer-oriented conduct by offering and promoting its Roblox social media platform.

368. The New Jersey Consumer Fraud Act ("NJCFA"), declares that "The act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception,

fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice[.]" N.J. Stat. Ann. § 56:8-2.

369.   Roblox violated the NJCFA by engaging in the "unlawful" business acts and practices alleged previously, and as further specified below.

370.   Roblox engaged in "unfair" business acts and/or practices by violating COPPA and the COPPA Rule.

371.   Roblox violated Sections 312.3, 312.4, and 312.5 of COPPA, 16 C.F.R. §§ 312.3-5, by collecting and using personal information from New Jersey Plaintiff and New Jersey Class Members without notifying their parents and obtaining verifiable parental consent.

372.   Roblox's business practices alleged herein are unethical, unscrupulous, and substantially injurious to children, and thus constitute an unfair practice under the NJCFA. The harm these practices caused to New Jersey Plaintiff and New Jersey Class Members outweigh their utility, if any.

373.   As a direct and proximate result of Roblox's unfair business acts and practices, New Jersey Plaintiff and New Jersey Class Members were injured and lost money or property.

374.   First, as a direct and proximate result of Roblox's unfair business acts and practices, New Jersey Plaintiff and New Jersey Class Members suffered "benefit-of-the-bargain" injuries and damages. New Jersey Plaintiff and New Jersey Class Members did not receive the full benefit of the bargain, and instead received services from Roblox that were less valuable than the services they would have received if Roblox had abided by COPPA.

375.   New Jersey Plaintiff and New Jersey Class Members, therefore, were damaged in an amount at least equal to the difference in value of the Roblox service that New Jersey Plaintiff and New Jersey Class Members received (where Roblox collected and used children's personal information without notifying parents or gaining their parents' consent) and the value of the Roblox service that New Jersey Plaintiff and New Jersey Class Members would have received if Roblox had abided by

COPPA (and not collected and used children's personal information without notifying parents or gaining their parents' consent).

376.    Second, as a direct and proximate result of Roblox's unlawful and unfair business acts and practices, New Jersey Plaintiff and New Jersey Class Members suffered "right to exclude" injuries and damages.

377.    New Jersey Plaintiff and New Jersey Class Members have a property interest in the personal information collected by Roblox. New Jersey Plaintiff and New Jersey Class Members suffered an economic injury because they were deprived of their right to exclude Roblox from their personal information.

378.    New Jersey Plaintiff and New Jersey Class Members damages may also be measured by the amount of monetary compensation that Roblox would have to provide to parents to gain their consent to collect and use their children's personal information.

379.    New Jersey Plaintiff and New Jersey Class Members seek restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief, actual damages, treble damages, attorney's fees, costs, and other relief allowable under N.J. Stat. Ann. § 56:8-19.

**COUNT ELEVEN — NEW JERSEY INTRUSION UPON SECLUSION**
*(Against Defendant by New Jersey Plaintiff and the New Jersey Class)*

380.    The New Jersey Plaintiff and New Jersey Class Members re-allege the foregoing allegations as if fully set forth herein.

381.    Under the laws of New Jersey, the New Jersey Plaintiff and New Jersey Class Members assert a claim for intrusion upon seclusion.

382.    The New Jersey Plaintiff and New Jersey Class Members possess a legally protected interest in their Private Information, including their personal information as defined by COPPA.

383.    The New Jersey Plaintiff and New Jersey Class Members maintained a reasonable expectation that when using Roblox, Defendant would not collect and/or use their Private Information.

384.    The New Jersey Plaintiff and New Jersey Class Members' reasonable expectation of privacy was supported by COPPA's prohibition on Roblox collecting and/or using personal

information from children under 13 years of age unless Roblox directly notified their parents and obtained verifiable parental consent.

385.    Roblox intentionally intruded upon the seclusion of the New Jersey Plaintiff and New Jersey Class Members by improperly collecting and using their personal information without obtaining consent.

386.    Roblox intentionally intruded upon the New Jersey Plaintiff and New Jersey Class Members' seclusion by improperly collecting and using their personal information, without providing direct notice to their parents or obtaining verifiable parental consent, as required by COPPA.

387.    Roblox's intrusion upon the seclusion of the New Jersey Plaintiff and New Jersey Class Members was substantial, and would be highly offensive to a reasonable person, constituting an egregious breach of social norms, as is evidenced by consumer surveys and academic studies detailing the harms of tracking children online, centuries of common law, state and federal statutes and regulations including COPPA and FTC regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, and scholarly literature on consumers' reasonable expectations.

388.    Roblox's intrusion upon the seclusion of the New Jersey Plaintiff and New Jersey Class Members was also substantial and highly offensive to a reasonable person, constituting an egregious breach of social norms, because Roblox uses the collected personal information for an improper purpose, including by targeting the New Jersey Plaintiff and New Jersey Class Members with behavioral advertising and collecting persistent identifiers.

389.    Roblox's intrusion upon the seclusion of the New Jersey Plaintiff and New Jersey Class Members' privacy also breached the New Jersey Plaintiff and New Jersey Class Members' own subjective expectations of privacy, which are accepted by society as reasonable, as embodied in COPPA and its implementing regulations.

390.    None of the New Jersey Plaintiff and New Jersey Class Members, nor their parents and/or guardians consented to Defendant's collection and use of their personal information.

391.    The New Jersey Plaintiff and New Jersey Class Members suffered actual and concrete injury as a result of Defendant's intrusion upon their seclusion.

392.    The New Jersey Plaintiff and New Jersey Class Members seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests and risk of future invasions of privacy, restitution, disgorgement of profits made by Roblox as a result of its invasion of the New Jersey Plaintiff and New Jersey Class Members' privacy, actual and punitive damages, and any other relief that the Court may deem just and proper.

### COUNT TWELVE — NEW JERSEY UNJUST ENRICHMENT CLAIM
*(Against Defendant by New Jersey Plaintiff and the New Jersey Class)*

393.    The New Jersey Plaintiff and New Jersey Class Members incorporate and reallege all allegations set forth above.

394.    Under the laws of New Jersey, the New Jersey Plaintiff and New Jersey Class Members assert a claim for unjust enrichment.

395.    By virtue of the unlawful and unfair conduct alleged herein, Roblox has realized millions of dollars in revenue from their collection and use of the Private Information of the New Jersey Plaintiff and New Jersey Class Members through behavioral advertising and commercialization of New Jersey Plaintiff's personal information.

396.    Roblox's ill-gotten gains were monetary benefits conferred upon Roblox by the New Jersey Plaintiff and New Jersey Class Members. It would be inequitable and unjust to permit Roblox to retain the economic benefits it obtained through advertising and commercialization derived from the Private Information of the New Jersey Plaintiff and New Jersey Class Members.

397.    Roblox will be unjustly enriched if it is permitted to retain the economic benefits conferred upon it by the New Jersey Plaintiff and New Jersey Class Members through its unlawful, unfair, unauthorized, and impermissible use of the Private Information of the New Jersey Plaintiff and New Jersey Class Members, and allowing Roblox to retain the profits from their unlawful, unauthorized, and impermissible use of the Private Information of the New Jersey Plaintiff and New Jersey Class Members would be unjust and contrary to public policy.

398.    The New Jersey Plaintiff and New Jersey Class Members are therefore entitled to recover the amounts realized by Roblox at the expense of the New Jersey Plaintiff and New Jersey Class Members.

399.    Roblox knew and appreciated that it was receiving monetary benefits due to the New Jersey Plaintiff and New Jersey Class Members having Roblox accounts. Roblox's business model includes monetizing Roblox accounts by serving them with targeted behavioral advertising.

400.    The New Jersey Plaintiff and New Jersey Class Members have no adequate remedy at law. They do not seek to recover in this claim for their own economic harm and have no adequate remedy at law that would divest Roblox of its ill-gotten and unjust profits. Furthermore, unjust enrichment is more prompt, efficient, and certain than the monetary damages that Plaintiff seek.

401.    To the extent that money damages, if available, would constitute an adequate remedy at law barring recovery under this claim, the New Jersey Plaintiff and New Jersey Class Members assert their claim for non-restitutionary disgorgement as an alternative remedy.

402.    The New Jersey Plaintiff and New Jersey Class Members are entitled to non-restitutionary disgorgement of Roblox's ill-gotten gains, and/or the imposition of a constructive trust to recover the amount of Roblox's ill-gotten gains.

## D.    WASHINGTON CLAIMS

### COUNT THIRTEEN — WASHINGTON NEGLIGENCE
*(Against Defendant by Washington Plaintiff and the Washington Class)*

403.    Plaintiff I.C., by and through their parent and guardian ad litem (the "Washington Plaintiff") and Washington Class Members incorporate the foregoing allegations as if fully set forth herein.

404.    At all relevant times, Defendant developed, set up, managed, maintained, operated, supervised, controlled, and benefited from Washington Plaintiff's and Washington Class Members' use of Roblox.

405.    Defendant owed Washington Plaintiff and Washington Class Members a duty to exercise reasonable care in Roblox's development, setup, management, maintenance, operation, supervision, and control to protect its under-13 users' personal information.

406.    Defendant also owed Washington Plaintiff and Washington Class Members a duty under COPPA not to collect, use, or disclose under-13 users' personal information without notifying parents and obtaining verifiable parental consent.

407.    Washington Plaintiff and Washington Class Members are within the class of persons that COPPA was intended to protect.

408.    Defendant also owed a special relationship duty to Washington Plaintiff and Washington Class Members to protect them against harm caused by Roblox. Washington Plaintiff and Washington Class Members, as children, are comparatively vulnerable and depend on Defendant for a safe environment on Roblox, and Defendant has the superior ability and control over Roblox to provide that safety on its app. The special relationship Washington Plaintiff and Washington Class Members have with Defendant substantially benefits Defendant through profits and growth in users and user activity. Defendant could not successfully operate without the increase in users and user activity generated by children.

409.    Defendant created Roblox and directed its activity through advertisements to minor users, including users under 13 years old. This created a special duty to exercise reasonable care to protect the minors from foreseeable harm while the minors were on Roblox.

410.    Defendant has voluntarily undertaken a responsibility to keep children safe on Roblox.

411.    Defendant is responsible not only for the result of their willful acts, but also for injuries occasioned to Washington Plaintiff and Washington Members by Defendant's want of ordinary care and/or skill in the management of their property.

412.    Washington Plaintiff and Washington Class Members were foreseeable users of Roblox.

413.    Defendant operates a website or online service directed at children under the age of 13, as defined by COPPA.

414.    Defendant had actual knowledge that children under the age of 13, such as Washington Plaintiff and Washington Class Members, were using and would use Full Access Platform.

415.    Defendant invited, solicited, and encouraged the fact, extent, and manner of Washington Plaintiff's and Washington Class Members' use of Roblox.

416.    Defendant had actual knowledge that the use of Roblox (as developed, set up, managed, maintained, supervised, and operated by Defendant) would result in Defendant collecting and using Washington Plaintiff's and Washington Class Members' personal information.

417.    At all relevant times, Defendant had actual knowledge that Roblox (as developed, setup, managed, maintained, supervised, and operated by that Defendant) posed unreasonable risks of harm to youth such as Washington Plaintiff and Washington Class Members through the collection, use, and/or disclosure of their personal information. Those risks were known and knowable.

418.    Defendant had actual knowledge that their under-13 users would attempt to create regular accounts instead of only trying to create under-13 accounts.

419.    Defendant had actual knowledge that when under-13 users created Full Access Platform accounts, their personal information would be treated without the adequate protections warranted for personal information of under-13 users online.

420.    Defendant had actual knowledge that its "age gate" features were not reasonably adequate to protect the privacy of children's information on Roblox.

421.    Due to Defendant's control over how youth set up accounts on Roblox, Defendant injured Washington Plaintiff and Washington Class Members by violating their privacy.

422.    Defendant had actual knowledge that it collected personal information as defined by COPPA from users under the age of 13.

423.    Defendant could have avoided Washington Plaintiff's and Washington Class Members' injuries with minimal cost, including, for example, by providing direct parental notice and requiring verifiable parental consent for its users.

424.    Imposing a duty on Defendant would benefit the community at large.

425.    Imposing a duty on Defendant would not be burdensome to it because it has the technological and financial means to avoid the risks of harm to Washington Plaintiff and Washington Class Members.

426.    Defendant owed a heightened duty of care to youth users of Roblox because children have a diminished capacity to understand how companies collect and use their personal information and for what purpose. Additionally, Defendant owed a heightened duty of care to youth users of Roblox

because it interacts directly with children out of the immediate oversight of their parents. Defendant was at all times the more sophisticated party and better positioned to understand children's privacy rights and their obligations to protect those rights adequately.

427.    Defendant breached its duty of care that it owed Washington Plaintiff and Washington Class Members through their affirmative malfeasance, actions, business decisions, and policies in Roblox's development, setup, management, maintenance, operation, supervision, and control. These breaches are based on Defendant's own actions in managing their own property—Roblox—that they made available to the public, independent of any actions taken by a third party. Those breaches include, but are not limited to:

A.    Facilitating use of Roblox by youth under the age of 13, including by adopting protocols that do not adequately verify the age or identity of users or by adopting ineffective age and identity verification protocols;

B.    Knowingly collecting personal information from youth under the age of 13 in knowing or reckless disregard of the fact that direct notice had not been provided to parents and verifiable consent had not been obtained from parents; and

C.    Willfully ignoring that significant numbers of under-13 users were maintaining Full Access Platform Roblox accounts.

428.    Defendant breached its duty of care that it owed to Washington Plaintiff and Washington Class Members through its non-feasance, failure to act, and omissions in the development, setup, management, maintenance, operation, supervision, and control of Roblox. These breaches are based on the Defendant's actions in managing their property—Roblox—that it made available to the public, independent of any actions taken by a third party. Those breaches include:

A.    Failing to implement effective protocols to screen users under the age of 13 from the Full Access Platform;

B.    Failing to implement effective protocols to prevent the collecting, sharing, and selling of the personal information of users under the age of 13 without prior affirmative authorization; and

C.    Failing to implement effective parental controls.

429.    These breaches also violate COPPA since Defendant collects, uses, and discloses under-13 users' personal information without notifying parents and obtaining verifiable parental consent.

430.    Defendant's violation of COPPA constitutes negligence per se.

431.    A reasonable company under the same or similar circumstances as Defendant would have developed, set up, managed, maintained, supervised, and operated its platforms in a manner that is safer for and more protective of youth users like Washington Plaintiff.

432.    At all relevant times, Washington Plaintiff and Washington Class Members used Roblox in the manner it was intended to be used.

433.    As a direct and proximate result of Defendant's breach of one or more of its duties, Washington Plaintiff and Washington Class Members were harmed by Defendant's violation of Washington Plaintiff's and Washington Class Members' privacy and the loss of control over when, how, and for what purpose their personal information is collected, used, and disclosed.

434.    The harm to the Washington Plaintiff and Washington Class Members is the type of harm that COPPA was intended to prevent.

435.    The Washington Plaintiff and Washington Class Members do not allege any harm or injury constituting a personal injury or emotional distress and do not seek damages based on those types of injuries.

436.    Defendant's breach of one or more of their duties was a substantial factor in causing harms and injuries to Washington Plaintiff and Washington Class Members.

437.    But for Defendant's violation of the applicable laws and regulations related to COPPA, Washington Plaintiff's and Washington Class Members' personal information would not have been used, collected, or disclosed to third parties.

438.    As a direct and proximate result of Defendant's negligence, Washington Plaintiff and Washington Class Members have been injured and are entitled to damages in an amount to be proven at trial.

439.    Washington Plaintiff demand judgment against Defendant for injunctive relief and for compensatory damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT FOURTEEN — WASHINGTON CONSUMER PROTECTION ACT,**
**WASH. REV. CODE. §§ 19.86.010, *ET SEQ***
*(Against Defendant by Washington Plaintiff and the Washington Class)*

440.    The Washington Plaintiff re-alleges and incorporates by reference herein all of the allegations contained above.

441.    The Washington Plaintiff, the Washington Class Members, and Roblox are "persons" within the meaning of Wash. Rev. Code § 19.86.010(1).

442.    Roblox committed the acts complained of herein in the course of "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.96.010(2).

443.    Roblox engaged in consumer-oriented conduct by offering and promoting its Roblox social media platform.

444.    Washington's Consumer Protection Act, Wash. Rev. Code §§ 19.86.010, *et seq.*, ("CPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020.

445.    The Washington CPA instructs that, in construing the Washington CPA, the courts are to be "guided by final decisions of the federal courts and final orders of the federal trade commission interpreting the various federal statutes dealing with the same or similar matters." Wash. Rev. Code § 19.86.920.

446.    Roblox violated the Washington CPA by engaging in the "unlawful" business acts and practices alleged previously, and as further specified below.

447.    Roblox engaged in "unfair" business acts and/or practices by violating COPPA and the COPPA Rule.

448.    Roblox violated Sections 312.3, 312.4, and 312.5 of COPPA, 16 C.F.R. §§ 312.3-5, by collecting and using personal information from Washington Plaintiff and Washington Class Members without notifying their parents and obtaining verifiable parental consent.

449.    Roblox's business practices alleged herein are unethical, unscrupulous, and substantially injurious to children, and thus constitute an unfair practice under the Washington CPA. The harm these practices caused to Washington Plaintiff and Washington Class Members outweigh their utility, if any.

450.     As a direct and proximate result of Roblox's unfair business acts and practices, Washington Plaintiff and Washington Class Members were injured and lost money or property.

451.     First, as a direct and proximate result of Roblox's unfair business acts and practices, Washington Plaintiff and Washington Class Members suffered "benefit-of-the-bargain" injuries and damages. Washington Plaintiff and Washington Class Members did not receive the full benefit of the bargain, and instead received services from Roblox that were less valuable than the services they would have received if Roblox had abided by COPPA.

452.     Washington Plaintiff and Washington Class Members, therefore, were damaged in an amount at least equal to the difference in value of the Roblox service that Washington Plaintiff and Washington Class Members received (where Roblox collected and used children's personal information without notifying parents or gaining their parents' consent) and the value of the Roblox service that Washington Plaintiff and Washington Class Members would have received if Roblox had abided by COPPA (and not collected and used children's personal information without notifying parents or gaining their parents' consent).

453.     Second, as a direct and proximate result of Roblox's unlawful and unfair business acts and practices, Washington Plaintiff and Washington Class Members suffered "right to exclude" injuries and damages.

454.     Washington Plaintiff and Washington Class Members have a property interest in the personal information collected by Roblox. Washington Plaintiff and Washington Class Members suffered an economic injury because they were deprived of their right to exclude Roblox from their personal information.

455.     Washington Plaintiff's and Washington Class Members' damages may also be measured by the amount of monetary compensation that Roblox would have to provide to parents to gain their consent to collect and use their children's personal information.

456.     Washington Plaintiff and Washington Class Members seek restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief, actual damages, treble damages, attorney's fees, costs, and other relief allowable under Wash. Rev. Code § 19.86.090.

1
2

**COUNT FIFTEEN — WASHINGTON INTRUSION UPON SECLUSION**
*(Against Defendant by Washington Plaintiff and the Washington Class)*

3       457.    The Washington Plaintiff and Washington Class Members re-allege the foregoing

4  allegations as if fully set forth herein.

5       458.    Under the laws of Washington, the Washington Plaintiff and Washington Class

6  Members assert a claim for intrusion upon seclusion.

7       459.    The Washington Plaintiff and Washington Class Members possess a legally protected

8  interest in their Private Information, including their personal information as defined by COPPA.

9       460.    The Washington Plaintiff and Washington Class Members maintained a reasonable

10 expectation that, when using Roblox, Defendant would not collect and/or use their Private Information.

11      461.    The Washington Plaintiff and Washington Class Members' reasonable expectation of

12 privacy was supported by COPPA's prohibition on Roblox collecting and/or using personal

13 information from children under 13 years of age unless Roblox directly notified their parents and

14 obtained verifiable parental consent.

15      462.    Roblox intentionally intruded upon the seclusion of the Washington Plaintiff and

16 Washington Class Members by improperly collecting and using their personal information without

17 obtaining consent.

18      463.    Roblox intentionally intruded upon the Washington Plaintiff and Washington Class

19 Members 'seclusion by improperly collecting and using their personal information, without providing

20 direct notice to their parents or obtaining verifiable parental consent, as required by COPPA.

21      464.    Roblox's intrusion upon the seclusion of the Washington Plaintiff and Washington

22 Class Members was substantial, and would be highly offensive to a reasonable person, constituting an

23 egregious breach of social norms, as is evidenced by consumer surveys and academic studies detailing

24 the harms of tracking children online, centuries of common law, state and federal statutes and

25 regulations including COPPA and FTC regulations, legislative commentaries, enforcement actions

26 undertaken by the FTC, industry standards and guidelines, and scholarly literature on consumers'

27 reasonable expectations.

28

465.    Roblox's intrusion upon the seclusion of the Washington Plaintiff and Washington Class Members was also substantial and highly offensive to a reasonable person, constituting an egregious breach of social norms because Roblox uses the collected personal information for an improper purpose, including by targeting the Washington Plaintiff and Washington Class Members with behavioral advertising and collecting persistent identifiers.

466.    Roblox's intrusion upon the seclusion of the Washington Plaintiff and Washington Class Members' privacy also breached the Washington Plaintiff and Washington Class Members' own subjective expectations of privacy, which are accepted by society as reasonable, as embodied in COPPA and its implementing regulations.

467.    None of the Washington Plaintiff and Washington Class Members, nor their parents and/or guardians consented to Defendant's collection and use of their personal information.

468.    The Washington Plaintiff and Washington Class Members suffered actual and concrete injury as a result of Defendant's intrusion upon their seclusion.

469.    The Washington Plaintiff and Washington Class Members seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests and risk of future invasions of privacy, restitution, disgorgement of profits made by Roblox as a result of its invasion of the Washington Plaintiff and Washington Class Members' privacy, actual damages, and any other relief that the Court may deem just and proper.

### COUNT SIXTEEN — WASHINGTON UNJUST ENRICHMENT CLAIM
### *(Against Defendant by Washington Plaintiff and the Washington Class)*

470.    The Washington Plaintiff and Washington Class Members incorporate and reallege all allegations set forth above.

471.    Under the laws of Washington, the Washington Plaintiff and Washington Class Members assert a claim for unjust enrichment.

472.    By virtue of the unlawful and unfair conduct alleged herein, Roblox has realized millions of dollars in revenue from their collection and use of the Private Information of the Washington Plaintiff and Washington Class Members through behavioral advertising and commercialization of the Washington Plaintiff's personal information.

473.    Roblox's ill-gotten gains were monetary benefits conferred upon Roblox by the Washington Plaintiff and Washington Class Members. It would be inequitable and unjust to permit Roblox to retain the economic benefits it obtained through advertising and commercialization derived from the Private Information of the Washington Plaintiff and Washington Class Members.

474.    Roblox will be unjustly enriched if it is permitted to retain the economic benefits conferred upon it by the Washington Plaintiff and Washington Class Members through its unlawful, unfair, unauthorized, and impermissible use of the Private Information of the Washington Plaintiff and Washington Class Members, and allowing Roblox to retain the profits from their unlawful, unauthorized, and impermissible use of the Private Information of the Washington Plaintiff and Washington Class Members would be unjust and contrary to public policy.

475.    The Washington Plaintiff and Washington Class Members are therefore entitled to recover the amounts realized by Roblox at the expense of the Washington Plaintiff and Washington Class Members.

476.    Roblox knew and appreciated that it was receiving monetary benefits due to the Washington Plaintiff and Washington Class Members having Roblox accounts. Roblox's business model includes monetizing Roblox accounts by serving them with targeted behavioral advertising.

477.    The Washington Plaintiff and Washington Class Members have no adequate remedy at law. They do not seek to recover in this claim for their own economic harm and have no adequate remedy at law that would divest Roblox of its ill-gotten and unjust profits. Furthermore, unjust enrichment is more prompt, efficient, and certain than the monetary damages that Plaintiff seek.

478.    To the extent that money damages, if available, would constitute an adequate remedy at law barring recovery under this claim, the Washington Plaintiff and Washington Class Members assert their claim for non-restitutionary disgorgement as an alternative remedy.

479.    The Washington Plaintiff and Washington Class Members are entitled to non-restitutionary disgorgement of Roblox's ill-gotten gains, and/or the imposition of a constructive trust to recover the amount of Roblox's ill-gotten gains.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of themselves and the proposed Class, respectfully request relief as follows:

A.    An order certifying this action as a class action, and certifying the Class defined herein, designating Plaintiffs, as described above, as the representatives of the respective Class defined herein, and appointing Plaintiffs' counsel as counsel for the Class;

B.    An order declaring that Defendant's actions, as described above constitute: (i) breaches of the common law claims set forth above; (ii) violations of the state consumer protection statutes set forth above; (iii) that Defendant was unjustly enriched as a result of its actions.

C.    A judgment awarding Plaintiffs and the Class appropriate relief, including actual, compensatory, and/or statutory damages, and punitive damages (as permitted by law), in an amount to be determined at trial;

D.    A judgment awarding any and all equitable, injunctive, and declaratory relief as may be appropriate, including orders of disgorgement of Defendant's unlawful gains, and restitution;

E.    A judgment awarding injunctive relief as set forth above, non-restitutionary disgorgement of profits and unlawful gains, and such other equitable relief as the Court may deem proper;

F.    A judgment awarding all costs, including experts' fees, attorneys' fees, and the costs of prosecuting this action, and other relief as permitted by law;

G.    Pre-judgment and post-judgment interest, as permitted by law; and

H.    Such other legal and equitable relief as the Court may deem appropriate.

## X.    JURY TRIAL DEMAND

480.    Plaintiffs respectfully demand a trial by jury on all issues so triable.

DATED this 21st day of November 2025

**KELLER ROHRBACK L.L.P.**


By: */s Christopher L. Springer*
Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

Derek W. Loeser (*pro hac vice* to be filed)
Cari Campen Laufenberg (*pro hac vice* to be filed)
Samuel Rubinstein (*pro hac vice* to be filed)
1201 Third Avenue, Suite 3400
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com
claufenberg@kellerrohrback.com
srubinstein@kellerrohrback.com